### JOHN LUNDBERG v. ANDREW D. DAVIDSON.

April 22, 1898.

Nos. 11,143—(226).

**Mortgage—Foreclosure under Power of Sale—Insanity of Mortgagor or Occupant— Validity — Inadequacy of Purchase Price—Good Faith.**

> The fact that the mortgagor or the occupant of the mortgaged premises has become insane does not suspend the power of sale in the mortgage, or render void a sale under it. If the power is exercised in bad faith, for the purpose of using such disability to gain an improper advantage of the mortgagor, the courts will set aside the sale. But if the mortgagee and the purchaser at the sale acted in entire good faith, and in ignorance of the disability of the mortgagor, the mere fact that the property was bid off for much less than its value, and that the mortgagor was insane at the date of the sale, and so continued until after the expiration of the time of redemption, will not of itself entitle the mortgagor to have the sale set aside, or to redeem from it, after the expiration of the period of redemption allowed by statute, especially where the purchaser at the sale has entered into lawful possession of the premises, and made valuable repairs and improvements.

Appeal by plaintiff from an order of the district court for St. Louis county, Cant, J., denying his motion for a new trial after findings and order for judgment in favor of defendant, as assignee in insolvency of the State Bank of Duluth. Affirmed.

*Austin N. McGindley* and *J. H. Whiteley,* for appellant.

*Schmidt, Reynolds & Mitchell,* for respondent.

Service of the notice of sale upon an insane occupant in foreclosure by advertisement is good. Lundberg v. Davidson, 68 Minn. 328.

72 M.—4

The fact that the mortagor becomes insane after giving the mortgage and before foreclosure does not render the foreclosure void. 2 Pingree, Mortg. § 1337; Encking v. Simmons, 28 Wis. 272; Berry v. Skinner, 30 Md. 567. Death of the mortgagor after giving the mortgage does not render the foreclosure void. Jones v. Tainter, 15 Minn, 423 (512); Reilly v. Phillips, 4 S. D. 604.

A judgment obtained against a lunatic based upon personal service of the summons is not void and cannot be collaterally attacked. Black, Judgm. §§ 205, 262; Freeman, Judgm. § 152; Vanfleet, Coll. Attack, § 459; Maloney v. Dewey, 127 Ill. 395; McAllister v. Lancaster, 15 Neb. 295. Where the notice required is a personal notice, it does not matter that the person upon whom it is served is an infant or is insane or under any other disability. 2 Jones, Mortg. § 1823; 2 Pingree, Mortg. § 1345; 26 Am. & Eng. Enc. 904; Bartlett v. Jull, 28 Grant, Ch. 140; Tracey v. Lawrence, 2 Drew, Ch. 403; Mellersh v. Keen, 27 Beav. 236; Robertson v. Lockie, 15 Sim. 285.

Mere inadequacy of price is no cause for setting aside a sale under foreclosure in the absence of fraud; but, where the inadequacy is great, the buyer who would retain the benefit of his bargain must show the good faith of the transaction. 2 Jones, Mortg. § 1670; 2 Pingree, Mortg. § 1986; 26 Am. & Eng. Enc. 952; King v. Bronson, 122 Mass. 122; Central v. Creed, 70 Cal. 497; Klein v. Glass, 53 Tex. 37; Kline v. Vogel, 11 Mo. App. 211; Fry v. Street, 44 Ark. 502; Babcock v. Canfield, 36 Kan. 437. And still less will such a sale be set aside where the property is subject to redemption; for in this case it is not to be expected that it will bring as much as at private sale, and there is no obligation on the part of a lien holder or any one else to bid any particular amount, certainly not above the amount of the lien. Wallace v. Berger, 25 Iowa, 456; Peterson v. Little, 74 Iowa, 223; Glide v. Dwyer, 83 Cal. 477; Equitable v. Schrope, 73 Iowa, 297; Meyer v. Kuechler, 10 Mo. App. 371; Coolbaugh v. Roemer, 32 Minn. 445; Griffith v. Milwaukee, 92 Iowa, 634; Erwin v. Parham, 12 How. 197; Greenup v. Stoker, 12 Ill. 24; State v. Kerr, 51 Minn. 417; Sowle v. Champion, 16 Ind. 165; Roe v. Ross, 2 Ind. 99; Maxwell v. Newton, 65 Wis. 261; Johnson v. Cocks, 37 Minn. 530; Graffam v. Burgess, 117 U. S. 180. The

case of Encking v. Simmons, 28 Wis. 272, relied upon by plaintiff, was a case of rank fraud.

MITCHELL, J.[1]

There was no dispute as to the facts in this case, except on two points,—the insanity of plaintiff, and the bank's knowledge of the fact,—upon which, under the evidence, the findings of the trial court are conclusive.

Plaintiff was the owner of two lots in Duluth, upon which he resided, and out of which he was entitled to a homestead exemption. His brother, Solomon, owned a lot which was incumbered by a mortgage for $3,000 executed prior to March, 1890. On March 1, 1890, the plaintiff and his brother executed to one Hoopes their joint promissory note for $4,000, payable in three years, with interest, and on the same day, as security for its payment, executed a mortgage covering their respective lots. This, of course, became a first lien on plaintiff's lots, and a second lien on Solomon's lot.

In February, 1891, the State Bank of Duluth obtained a judgment against plaintiff for $6,000, and in the summer of 1894 advertised plaintiff's two lots for sale on execution. Plaintiff claimed the north or front half of the lots as his homestead, and thereupon, on June 23, 1894, the bank caused the property to be sold in two parcels, and bid in the north or front half for $500, and the south or rear half for $250. There has never been any redemption from this sale. This execution sale is not involved or assailed in this action.

The assignees of the Hoopes mortgage, who resided in the East, proceeded to foreclose under a power of sale, and advertised the mortgaged premises for sale at public auction on August 18, 1894. The amount then due on the mortgage was nearly $4,800. Personal notice of the sale, as required by statute, was served on plaintiff, who, with his family, was in the actual occupancy of the lots owned by himself. The bank, having learned of the pending foreclosure, by its agent, one Turner, attended the sale. The lot of Solomon was first offered for sale, and bid in for the bank for some

1 BUCK, J., absent, took no part.

$3,800. This was subject to the prior mortgage for $3,000, and also to about $150 delinquent taxes. The two lots of plaintiff were then offered for sale as one tract, and bid in for the bank for $1,000, —the balance claimed by the mortgagees to be due on their mortgage. These lots were subject to a lien for $1,000 delinquent taxes. At this time the lots of the plaintiff were reasonably worth $6,500, and the lot of his brother, Solomon, a little more,—perhaps $7,000. There was no redemption of plaintiff's lots; the time for doing so expiring August 18, 1895.

Subsequently the bank obtained peaceable possession of the premises, and expended thereon between $500 and $600 in improvements and repairs. The plaintiff having afterwards re-entered the premises, the defendant, as assignee in insolvency of the bank, in an action brought for that purpose regained, and still retains, possession.

Thereafter, and in November, 1896, the plaintiff brought this action, asking that he be allowed to redeem from the mortgage foreclosure sale upon payment of the amount which it might be determined he justly owed on the mortgage. The general grounds upon which he asks for this relief are the inadequacy of price bid for the property, his insanity at the time of the sale, continuing until after the expiration of the statutory time for redemption. He also alleged a fraudulent scheme on part of the bank to take advantage of his insane condition, so as to obtain his property for a small part of its actual value; but the claim of actual fraud is practically abandoned, the main contention of the plaintiff now being that his insanity, coupled with the inadequate price for which his property was bid off, amounted to constructive fraud, which entitles him to the equitable relief prayed for. The court found as facts:

"That the plaintiff was during all of the time covered by the foreclosure proceedings in controversy herein, and up until on or about May 1, 1895, insane, and incompetent to transact business; that said insanity and incompetency were accompanied, and probably occasioned, by excessive drinking, and on or about May 1, 1895, plaintiff was by the probate court for St. Louis county, Minnesota, sent to the asylum at Rochester, in this state, as an inebriate, and was thereafter, on or about November 1, 1895, discharged from said asylum as cured; that said insanity and incom-

petency were unknown to the owner of said mortgage, and were unknown to said Charles I. Turner, the purchaser at said mortgage sale, or to the State Bank of Duluth, in whose interest said purchase was made; that the owner of said mortgage, said Charles I. Turner, and said State Bank of Duluth had no knowledge or notice of any kind of the insanity or incompetent condition of the plaintiff herein.

"That the foreclosure sale in controversy in this action was regularly and legally conducted, after due and legal notice, and the bidding thereat was open and fairly conducted, and the purchase of the property herein in controversy was made thereat by said Turner, on behalf of said State Bank of Duluth, in good faith, for the purpose of protecting the interests of said bank in said property, and not for the purpose of defrauding the plaintiff herein, or of depriving him of said property, and was made without any knowledge of the insanity or incompetency of the plaintiff herein; that said foreclosure was instituted, without the knowledge of said Turner or said bank, by the owner of said mortgage, and was instituted in good faith, and all the proceedings thereunder, including the sale and purchase by said Turner for said bank, were had in perfect good faith, and were free from fraud or oppression of any kind."

The court also found that Turner attended the sale and bid thereat for and on behalf of the bank, and made his bids thereat for the purpose of protecting its interests acquired in plaintiff's lots under the execution, and the unsatisfied portion of its judgment against the plaintiff.

All we need say about these findings is that in our opinion they were justified by the evidence. There is neither evidence nor finding that either the bank or its agent, Turner, in any way controlled or influenced the conduct of the sale. Turner simply attended as bidder, and bid on the property when it was offered for sale. We are at a loss to discover any principle of law or equity upon which, under these facts, the plaintiff is entitled to the relief which he asks.

His counsel contended very earnestly, at least in their oral argument, that the service of the notice of the foreclosure upon plaintiff while he was insane was insufficient for any purpose, and hence that the foreclosure was absolutely void; that where the occupant of the mortgaged premises is insane the power of sale is suspended, and there can be no valid foreclosure under it; that the

'mortgage can only be foreclosed by action, in which a guardian ad litem may be appointed to protect his interests. This is directly contrary to what was held on the former appeal in this action. 68 Minn. 328, 71 N. W. 395. Such would not be the law even in case of a judgment obtained against the lunatic, based upon personal service of the summons upon him. Freeman, Judgm. § 152; Black, Judgm. § 205.

A foreclosure under a power is a proceeding in pais as well as in rem; and the fact that one of the terms of the exercise of the power is the service of the notice upon the occupant of the premises does not change the proceeding into a judicial one, or into a personal action against such occupant. Such a notice is in its nature analogous to notice to a tenant to quit, or a notice of a dishonored promissory note or bill of exchange. Where the notice required is a personal notice, it does not matter that the person upon whom it is served is an infant, or insane, or under any other disability. Of course such disabilities cannot be used to gain an improper advantage; and, if they are, the court will set aside the sale. As was said on the former appeal, at page 331, in such cases

"A court of equity requires a higher degree of fidelity in those who sold and bought under the power, knowing that the mortgagor was in this helpless condition."

But no case can be found which holds that a sale under a power coupled with an interest is void on the ground that the mortgagor, or any person upon whom notice is to be served, is insane, or under any other disability. Jones, Mortg. § 1823; Pingree, Mortg. §§ 1337, 1345; 26 Am. & Eng. Enc. 904; Berry v. Skinner, 30 Md. 567; Davis v. Lane, 10 N. H. 156; Encking v. Simmons, 28 Wis. 272; Tracey v. Lawrence, 2 Drew, Ch. 403; Robertson v. Lockie, 15 Sim. 285; Mellersh v. Keen, 27 Beav. 236; Bartlett v. Jull, 28 Grant, Ch. 140.

Courts are very liberal in setting aside judgments against insane persons where the summons was served on them while under disability. They are also very liberal in permitting insane persons to repudiate or rescind contracts entered into by them while under disability, even where the other party is not at fault, pro-

vided the latter can be placed in statu quo. But we have found no case where a sale under a power exercised in perfect good faith was ever set aside merely because the mortgagor, or some party on whom notice is required to be served, was insane, or under some other disability, at the time the power was exercised, or for that reason coupled with the further fact that the price for which the property was sold was much below its actual value. Any such doctrine would render titles acquired on sales under powers exceedingly uncertain and unreliable. In fact, a mortgagee or a purchaser at the sale would never know with absolute certainty whether his foreclosure or purchase was valid.

Two of the chief advantages of a sale under a power are that it avoids the necessity of bringing in as parties all persons in interest, and also avoids the danger of a failure to secure a perfect title, by reason of a defect of parties defendant. But if such titles are liable to be set aside, notwithstanding the utmost good faith on part of both mortgagee and purchaser, merely because the property was bid in for less than it was worth, and the party in possession, whether the mortgagor or some one else, happened to have become insane, they are, of all titles, the most insecure. It is a well-known fact that under our statute, which gives a year's redemption, there is usually no competition at the sale, and really no actual sale for cash. The property is, as a rule, bid in for the amount due on the mortgage, whether that be the full value of the property, or much less. If there is any outside bidder, it is usually, as in this case, some one who has a junior lien upon or interest in the premises, which he desires to protect. It was perfectly legitimate for the bank, if it saw fit, to bid up on Solomon's lot, in which it had no interest, in order to protect its interest in plaintiff's lots under the execution sale.

Counsel for plaintiff greatly rely on Encking v. Simmons, supra, as supporting their contention. The opinion in that case contains some statements which, if detached from their context, and considered without reference to the particular facts, would, in our judgment, be of doubtful accuracy. It also cites some authorities which are not entirely analogous,—as, for example, cases involving contracts made while a party was insane. But that case is clearly

distinguishable on its facts from the present one, and was doubtless rightly decided. In that state, in equity cases the findings of fact of the court below are not conclusive on the appellate court, which will look into the evidence and review it in the same manner as a court of original jurisdiction, and determine for itself what facts the evidence established. Felch v. Lee, 15 Wis. 265.

In Encking v. Simmons the court, upon a review of the evidence, held that it showed that the plaintiff had been employed to hunt up the mortgagee and set the foreclosure in motion; that he and the mortgagee knew all about the insanity of the mortgagor and his confinement in the poor house; that the mortgagee bid off the premises for less than half their value, and immediately assigned the certificate of sale to the plaintiff for a slight advance over the amount bid, and gave to plaintiff an agreement to refund the purchase money, or so much of it as should not be realized from the redemption, in case the land was redeemed within the time allowed by law; that the whole proceedings were taken for the clearly-ascertained purpose of depriving the lunatic of his property; that the resort to foreclosure under the power was a cunning contrivance, devised and executed, malo animo, to deprive an insane man of his property. And in the course of the opinion the court, referring to what is said by Justice Story, adds at page 280,

"It shows that the true and only ground upon which courts of law, as well as equity, interfere to protect and restore the property of insane persons, and such as are otherwise non compotes mentis, is fraud."

Courts always lend an indulgent ear to the complaints of insane persons, and others under disability, to protect their property against fraud, or any attempt to take an unconscionable advantage of them; but we do not see how, upon the facts found in this case, the plaintiff can be granted relief, without disregarding well-settled principles of law, and unsettling titles to property.

Order affirmed.