JOHN L. DE LANCEY v. M. F. FINNEGAN and Another.[1]

May 23, 1902.

Nos. 12,899—(62).

**Mortgage—Purchase of Right of Redemption.**

The doctrine, "Once a mortgage always a mortgage," has no application to a future contract between the mortgagor and mortgagee for the purchase of the mortgagor's right of redemption. The mortgagee may always purchase the mortgagor's right of redemption, for a fair consideration, if the transaction is untainted by any oppression or advantage taken of the necessities of the mortgagor. Equity will scan such sales with jealous care, and require their fairness to be clearly established.

**Same—Right of Creditor of Mortgagor.**

The mortgagor herein conveyed his equity of redemption to the mortgagee, who five years thereafter conveyed the mortgaged premises to the wife of the mortgagor. *Held*, upon a consideration of the evidence, that such sale of the equity of redemption was not made to defraud creditors, nor was it unfair or oppressive, but valid, and that the plaintiff is not entitled to subject the land to the payment of a judgment against the husband.

Appeal by plaintiff from a judgment of the district court for Stevens county, dismissing the action, entered pursuant to an order of Flaherty, J. Affirmed.

*Orville Rinehart* and *Owen Morris*, for appellant, cited: 2 Bigelow,

[1] Reported in 90 N. W. 387.

Fraud, 125–127, 191, 196; G. S. 1894, §§ 4280, 4281; Rogers v. McCauley, 22 Minn. 384; Matthews v. Torinus, 22 Minn. 132; Wolford v. Farnham, 44 Minn. 159; Ladd v. Newell, 34 Minn. 107; Welch v. Bradley, 45 Minn. 540; Minneapolis Stock Yards & Packing Co. v. Halonen, 56 Minn. 469; 1 Greenleaf, Ev. (16th Ed.) § 284; Niggeler v. Maurin, 34 Minn. 118; King v. McCarthy, 50 Minn. 222, 225; Blakeley v. Le Duc, 25 Minn. 448; Jones v. Blake, 33 Minn. 362; Heaton v. Darling, 66 Minn. 262, 265.

*W. C. Bicknell*, for respondents.

START, C. J.

Action, in the nature of a creditor's bill to subject to the payment of a certain judgment against the defendant M. F. Finnegan, and now owned by the plaintiff, six hundred eighty acres of land in the county of Stevens, the record title whereof is in the defendant Mary Finnegan. The trial court dismissed the action at the close of the plaintiff's case. Judgment was so entered, from which the plaintiff appealed.

The complaint alleges that in the year 1893 the defendant M. F. Finnegan was indebted to the First National Bank of Northfield, Minnesota, and on December 24, 1896, judgment for $1,786.12 on account of such indebtedness was recovered and duly docketed in the county of Stevens by the bank against such defendant; that execution upon the judgment was duly issued and returned unsatisfied, and that the judgment was assigned to the plaintiff January 22, 1901; that, when such indebtedness was incurred, the defendant M. F. Finnegan was the owner of the land described in the complaint, and that in the year 1895 he conveyed it to the Travelers' Insurance Company of Hartford, Connecticut (hereafter designated as the "Insurance Company"), upon the secret trust that he should retain the possession of the land, and that it should be reconveyed to him by the insurance company at some future time; and further that on December 1, 1899, the insurance company, at the request of the defendant M. F. Finnegan, and for a consideration moving solely from him, conveyed the land to his wife, the defendant Mary Finnegan, all of which was done to defraud his creditors, and to avoid the lien of such judgment.

The answer of the defendant Mary Finnegan alleges, in effect, that the land was sold and conveyed absolutely to the insurance company for a valuable consideration, and that afterwards she purchased it for a consideration paid by her, and that it was accordingly conveyed to her, and that she is the owner thereof. All other allegations of the complaint are put in issue by the answer. On the trial the indebtedness of the defendant M. F. Finnegan, the recovery and docketing of the judgment thereon, its assignment to the plaintiff, and the return as unsatisfied of an execution thereon, as alleged in the complaint, were admitted.

The evidence introduced by the plaintiff to support the other issues made by the pleadings were undisputed, and established these facts: On February 23, 1888, the defendant M. F. Finnegan was the owner of the land in question, eighty acres of which was his homestead, and on that day he and his wife, Mary Finnegan, executed to the insurance company a mortgage thereon to secure the payment of $5,000 in five years, with annual interest at the rate of eight per cent. per annum. On March 8, 1894, there was past due and unpaid upon this mortgage, as interest, $1,620, and the whole of the principal. The land had been sold for the taxes levied thereon for the years 1887 to 1891, inclusive, and the taxes thereon for the years 1892 and 1893 were unpaid. The land was then of no greater value than the amount due upon the mortgage and for taxes. Thereupon, and on the day last named, Finnegan and his wife conveyed the land to the insurance company, the mortgagee; and at the same time, and as a part of the same transaction, the latter executed to M. F. Finnegan a lease of the land, and to him and to his wife a contract giving them the right to purchase the land upon the terms therein named. The deed contained this covenant:

"The parties of the first part covenant that the premises are free from all incumbrances, except one certain mortgage, for $5,000, executed by them to the grantee within named, and taxes for the years 1886, '87, '88, '89, '90, '91, '92, and '93."

The lease gave to the lessee the use and occupation of the land until November 10, 1894, in consideration of one dollar and other

86 M.—17

valuable considerations the receipt whereof was acknowledged, and contained the usual covenant to surrender the rented premises at the expiration of the term. The contract, in which the insurance company was designated as the party of the first part, and Finnegan and wife as parties of the second part, after reciting the giving of the mortgage, and the failure of the mortgagors to pay the principal and interest of the mortgage debt, and the taxes on the land, and that the mortgagee had given notice of its intention to foreclose the mortgage, contained the recitals and stipulations following:

"And whereas, the said party of the second part, in consideration of the forbearance of said party of the first part from commencing foreclosure proceedings, and the cancellation of said debt secured by said mortgage, and the surrendering of the notes evidencing said debt, and delivering of same to said party of the second part, and for the further consideration of the leasing of the premises described in said mortgage to said party of the second part, by indenture bearing even date herewith, to and until the 10th day of November, 1894, has this day conveyed the said premises described in said mortgage to said party of the first part by good and sufficient deed: Now, therefore, it is agreed by and between said parties that the said party of the first part shall have the right to purchase all of said premises mentioned in said mortgage * * * for the sum of $6,620.82, and interest thereon at the rate of 8 per cent. from the eighth (8) day of March, 1894, and for such additional sum or sums as the said party of the first part may have paid for taxes and insurance upon said premises, together with interest on said sum or sums so paid at the rate of 8 per cent. from the date of such payment, or any time prior to the expiration of the lease above mentioned, to wit, the 10th day of November, 1894. And the said party of the first part does agree to convey said premises to said party of the second part for the said sum above mentioned, and interest and taxes and insurance, as above set forth, upon the payment to the said party of the first part of all said sum or sums above mentioned on or before the expiration of said lease, to wit, the 10th day of November, 1894; time being made the essence of this contract. * * *"

The mortgage was not released of record until December 1, 1899.

This contract contained no promise on the part of the parties of the second part, or either of them, to purchase the land, or to pay the insurance company any sum whatever. Neither of them ever exercised the optional right to purchase the land upon the terms

stated in the contract, but on October 1, 1894, the insurance company leased the land to Mary Finnegan from November 10, 1894, to November 10, 1897, for one-fourth of all crops to be raised thereon by her, and $100 for each year. The insurance company reserved the right to sell the land, or any part thereof, at any time; and she covenanted, if it did so, to surrender possession of the land sold, reserving the right to harvest and remove any crops she might have thereon. She performed the conditions of the lease on her part, and at its expiration the insurance company leased the land to her for a further term; and on December 1, 1899, she purchased the land of the insurance company for a sum which equaled the money the insurance company then had invested in the land.

The land by this time had very materially increased in value, and at the time of the trial (March, 1901) it was of the estimated value of $18 per acre, exclusive of the improvements thereon. This enabled the defendant to borrow from a third party the money to purchase the land, and secure its payment by a mortgage thereon. Her husband managed and cared for the land for her during all the time she held it under the leases, and, as her agent, he went to Hartford, Connecticut, and negotiated with the insurance company for the purchase of the land.

On her cross-examination, Mrs. Finnegan testified, in effect, that at the time the land was deeded to the insurance company she had a hope that they might get the farm back some time; that there was an oral understanding that they might buy it back some time, if they were able; and that it was in reliance upon the good faith of the insurance company that her husband opened negotiations with it for the purchase of the land. Upon her attention being called to the written contract giving her and her husband the right to purchase the land, she further testified to the effect that the oral understanding referred to by her was reduced to writing, and such contract was the only agreement ever made between the insurance company and herself and husband, or either of them, prior to the time she purchased the land and received a deed therefor from it.

It is claimed by the plaintiff that the evidence given on the trial is ample to sustain the allegation of his complaint to the effect

that the land was conveyed to the insurance company for the purpose of defrauding the creditors of the grantor, M. F. Finnegan, and that the grantee thereafter held the land upon the secret trust to reconvey the same to such grantor. It is clear from the record in this case that the evidence would not justify such a finding. The mere reading of the record, the substance of which we have attempted to set forth as briefly as practicable, shows that when the land was conveyed in the spring of 1894 there was no equity in the land for the creditors, and that, whatever may have been the purpose of the conveyance, there was no intention, in fact, to defraud creditors. But it is strenuously urged by the plaintiff that M. F. Finnegan, the husband, furnished the consideration for the purchase of the land by Mrs. Finnegan from the insurance company in 1899; hence the conveyance is presumed fraudulent as against creditors at that time; and, a fraudulent intent not having been disproved, a trust resulted, pursuant to G. S. 1894, § 4281, in favor of the plaintiff, to the extent necessary to satisfy his judgment.

The proposition assumes that the husband paid the consideration for the conveyance of the land by the insurance company to the wife. The undisputed fact is that she paid the consideration by securing the purchase price of the land by a mortgage thereon to a third party, and not otherwise. It necessarily follows that if the husband was then the owner of the land, subject only to a mortgage thereon to the insurance company, he furnished the consideration for the conveyance; and, unless a fraudulent intent was disproved, a trust resulted as claimed. The question then is, did the husband so own the land? If he did, the judgment appealed from must be reversed, for the trial court made no findings in the case; but, if he did not, it must be affirmed.

The contention of the plaintiff on this point is, in effect, that the husband's equity of redemption in the land was never extinguished, and that the deed of the land from him and his wife to the insurance company, the mortgagee, was but a change in the form of the security for the payment of its debt, and that the case falls within the doctrine, "Once a mortgage always a mortgage." This precept, however, has no application to a future con-

tract between the mortgagor and mortgagee for the purchase of the mortgagor's right of redemption. The mortgagee may always purchase from the mortgagor his right of redemption, for a fair consideration, if the transaction is untainted by any oppression or advantage taken by the mortgagee of the necessities of the mortgagor. Equity will scan sales of the equity of redemption with jealous care, and require their fairness to be clearly established. Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 369; Marshall v. Thompson, 39 Minn. 137, 39 N. W. 309; Bradbury v. Davenport, 114 Cal. 593, 46 Pac. 1062, 55 Am. St. Rep. 105, and notes.

Now, it is obvious from the documentary evidence herein that the mortgagee in this case did purchase the mortgagor's equity of redemption in the land, and that the deed, lease, and option to purchase the land were intended to effect such purchase and sale, and were so understood by all the parties thereto. Was the contract to purchase for a fair consideration, and free from any oppression or advantage taken by the mortgagee of the necessities of the mortgagor? This question must be considered from the view point of the facts as they existed at that time, and not as they were five years later, when prosperity had come to brighten and bless, and the land had materially increased in value.

At the time of the sale of the equity of redemption the principal of the mortgage was more than a year past due. No interest had been paid for four years, no taxes for seven years, and the land was worth no more than the liens upon it. The mortgagee had the right, legally and ethically, to foreclose its mortgage, and was about to do so. All there was in the land for the mortgagors was what they might realize from cropping it during the year allowed for redemption. There was also left to them the possibility that if the crop proved to be bountiful, and they obtained a good price therefor, they might be able, from the proceeds of the crop and what they could borrow on the land, to redeem from the insurance company's foreclosure sale. But a foreclosure would only add to their burdens. The contract for the purchase of the equity of redemption secured to the mortgagors a cancellation of their debt, and a surrender of the notes evidencing it, the free use of the land for the then coming cropping season, and the option to purchase

the land, at any time before the expiration of the lease, for just the amount the insurance company had invested in the land, without any obligation on their part to make such purchase. In short, the contract secured to the mortgagors all the rights and equities they would have had if the sale had not been made and the mortgage had been foreclosed, and more. The sale was for a fair consideration, and was untainted by any oppression or advantage taken of the necessities of the mortgagors.

That the mortgagors understood before the expiration of the option to purchase the land that they would not be able to exercise the option is evident from the fact that a three-year lease of the land was made to the wife, and accepted, in October, 1894, to take effect at the expiration of the husband's term. The stipulation in this lease to the effect that the insurance company had the right to sell the land at any time during the term, giving to the lessee the right to harvest and remove her crops, shows that all of the parties understood that the insurance company was the absolute owner of the land. The mortgagors have never complained of the contract for the sale of their equity of redemption; nor any creditor, until conditions changed, and Mrs. Finnegan was thereby enabled to borrow money enough on the land to buy it. She is under no obligation to share her good fortune with the plaintiff. This case, as to the plaintiff, stands precisely as if the insurance company had never sold the land to Mrs. Finnegan, and he had brought an action against the insurance company to secure a decree adjudging that it held the land simply as a mortgagee, and that his judgment debtor was the owner thereof, subject to the mortgage. If on the trial of such action the evidence were the same as contained in the record in this case, could it be reasonably claimed that such evidence would justify a finding in his favor? Clearly not, for it is not difficult to read between the lines of the record that this action would never have been heard of if the insurance company had retained the land, or sold it to a third party.

We have considered the record in this case as if none of the testimony of Mrs. Finnegan had been stricken therefrom; hence it

is unnecessary to inquire whether it was error for the court to strike out any part of it.

It follows that the insurance company was the absolute owner of the land when it sold it to Mrs. Finnegan, that her husband did not furnish the consideration for its purchase, and that the trial court properly dismissed this action.

Judgment affirmed.