J. M. ARETZ v. LOUIS C. KLOOS and Others.[1]

May 29, 1903.

Nos: 13,533, 13,534—(107, 108).

### Fraudulent Conveyance.

Proof that a conveyance of real property is fraudulent must be clear and satisfactory. It must be sufficiently strong and cogent to satisfy a man of sound judgment as to the truth of the allegation of fraud.

### Conveyance from Mortgagor to Mortgagee.

The conveyance of a tract of land, which is, for all practical purposes, mortgaged to the full amount of its value, by a mortgagor to the mortgagee, in satisfaction of the debt, is not fraudulent and void as to a judgment creditor of the former, although such conveyance may have been made with intent to put the land beyond the creditor's reach.

### Good Faith.

In determining the good faith of a transaction of this character, the trial court may and should take into consideration the fact that the expenses of a foreclosure of the mortgage will increase the financial burden

[1] Reported in 95 N. W. 216, 769.

already upon the land, and will further reduce the interest or equity which the debtor may have therein, and also that a sale thereof upon execution must necessarily be made subject to the inchoate, contingent interest held by the debtor's wife—an interest which becomes fixed and certain if she survives her husband.

## Findings Unsupported by Evidence.

To secure the payment of the purchase price of sixty acres of land, the purchaser executed and delivered a morgtage upon the same, and also upon his statutory homestead of eighty acres. In case of a fore-closure, he could have first compelled a sale of the unexempt sixty acres to satisfy the debt. The value of the sixty acres was substantially the amount of the mortgage debt, when in payment thereof the mortgagee took a conveyance of that tract, and satisfied the mortgage as to both tracts. *Held*, under the circumstances disclosed by the evidence, that a finding to the effect that the conveyance in satisfaction of the mortgage debt was fraudulent, and made for the purpose of hindering, delaying, and defrauding a judgment creditor, was wholly unsupported by the evidence.

## Chattel Mortgage.

*Held*, further, that another finding of the trial court, to the effect that a certain chattel mortgage, given to secure another bona fide debt, was made by the debtor with an intent to hinder, delay, and defraud the same creditor, was not supported by the evidence.

Action in the district court for Carver county by plaintiff, as trustee in bankruptcy of defendants Louis C. Kloos and Henry E. Kloos, to vacate and set aside a conveyance of land and a chattel mortgage alleged to have been made by said defendants, in fraud of their creditors, to defendant George H. Kloos. The case was tried before Cadwell, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendants appealed. Reversed and remanded with instructions.

*S. R. Child* and *Harrison E. Fryberger*, for appellants.

*W. C. Odell*, for respondent.

COLLINS, J.

This action was brought by a judgment creditor in aid of an execution which had been levied upon certain real and personal property alleged to have been conveyed by one of the judgment debtors—his wife joining in the deed of the land—subse-

89 M.—28

quent to the rendition of the verdict, but before the entry of judgment, for the express purpose of hindering, delaying, and defrauding the judgment creditor.

The real property in question comprised sixty acres of land under cultivation, but on which there were no buildings. In 1893 the defendant George H. Kloos, father of Louis C. and Henry E. Kloos, defendants and judgment debtors, had sold and conveyed this land to the son Louis C., the consideration being $2,000, for which he accepted promissory notes, five in number, $400 each, and bearing interest at five per cent. per annum, payable annually, secured by a mortgage upon the land, which was duly recorded. The verdict was obtained in March, 1901, and judgment entered on June 10 of the same year. The defendant Louis C. also owned certain unexempt personal property, and owned and resided upon eighty acres of land, which was his homestead. The mortgage heretofore mentioned also covered this eighty. The mortgagee, George H. Kloos, immediately after the verdict was rendered, concluded to foreclose his mortgage, nothing having been paid on the promissory notes; and the parties seem to have consulted a lawyer with reference to the proper course of procedure. They were advised that by agreement the mortgagors could convey to the mortgagee the sixty acres of land in full satisfaction and payment of the mortgage debt. Thereupon they attempted to ascertain the amount due, and evidently compounded the interest, making due $3,150. It was then agreed that the deed should be made and executed by the mortgagors and delivered to the mortgagee with an expressed consideration of $3,150; that the mortgagee should surrender and deliver up the notes as fully paid, and should discharge his mortgage upon the two tracts of land, and satisfy the same of record in the office of the register of deeds. This was done, and operated to release the homestead from the mortgage lien, and to transfer the title to the sixty acres to defendant George H. Kloos on May 3.

It also appeared that for some time previous defendant Louis C. had been indebted to his father in the sum of $300, which was evidenced by a promissory note. On the following May 27 this note was surrendered to the maker, and a new one made and

delivered, which was secured by a chattel mortgage upon the unexempt personal property before mentioned, the value of which was not found by the court. This chattel mortgage was duly filed. Later, and upon the entry of judgment, an execution was issued, and a levy made upon the sixty acres of land, and also upon the personal property described in the chattel mortgage. On December 12, 1901, both Louis C. and Henry Kloos were adjudicated bankrupts under the federal statute, and thereupon the present plaintiff, Aretz, was appointed trustee in bankruptcy.

This action had been previously commenced, in the month of August of that same year, and at the trial, which came on in May, 1902, the trustee in bankruptcy was substituted as plaintiff in place of the judgment creditor, and without objection. At the conclusion of this trial, findings of fact were made; the main one being that the deed of the land was made and accepted with a fraudulent intent, purpose, and design on the part of all the parties thereto to hinder and delay the collection of the judgment, and to defraud the judgment creditor, and also that the chattel mortgage was executed, delivered, and accepted with the same fraudulent intent. As a conclusion of law, both instruments were held fraudulent and void as against the judgment. The court below also ordered a sale of the property upon the execution to satisfy the judgment, with costs of this action and of the sale. This appeal is from an order denying a motion for judgment in favor of the defendants, and also a motion for a new trial in case judgment was refused.

Counsel for the defendants make several assignments of error —some of them directed to rulings of the court upon the admission and rejection of testimony, and others to findings of fact and conclusions of law. We find it necessary to consider but one question, and this goes directly to the right of plaintiff to relief under any circumstances. The amount of the indebtedness upon the notes secured by the mortgage was found by the court to be $2,759.11 on May 3, 1901, when the deed was executed. The court also found that the value of the sixty acres of land at the time was $2,800—a trifle more than the mortgage debt. There was no finding, and there seems to have been no intimation at the trial,

that the $300 note, to secure which the chattel mortgage was given, was fraudulent to any extent, or that the debt was not bona fide to the full amount. It is to be noticed here that this chattel mortgage was executed more than six months prior to the adjudication in bankruptcy.

We assume, without discussion, that the present plaintiff, as trustee in bankruptcy, could maintain this action in aid of an execution issued upon the judgment against the bankrupts, and we also assume that this trustee was properly substituted for the judgment creditor. With this assumption, we come at once to the contention that the conveyance of the sixty acres was for a sufficient consideration, and was not an act of fraud which would authorize the maintenance of an action to set it aside. The mortgage was given to secure the payment of the purchase price of the sixty acres, and it not only covered that tract of land, but the homestead of eighty acres, owned and occupied by the mortgagor and his wife. As a mortgagor has the right to have real estate mortgaged with the homestead first sold to satisfy the mortgage debt, and the unexempt land is primarily subject to sale in payment thereof, this appeal must be treated precisely as if the mortgage covered the sixty acres only. This is particularly a case for the employment of the doctrine, because the mortgage was given to secure the purchase price of the sixty acres, and for no other indebtedness. As before stated, the debt at the time of the transaction amounted to $2,759.11, while the court found that the value of the land was $2,800—a difference of a little over $40. It is obvious that when the deed was taken there was no real disparity between the amount of the debt and the value of the land, and, in passing, we may refer to the fact that the testimony would have easily warranted a finding that the land was actually worth much less than $2,800.

It is a well-settled principle, frequently announced by this court, and almost elementary, that a conveyance of land to the mortgagee or to any other person, incumbered for more than its value, is not void as to creditors of the grantor, though made with the intent of putting the land beyond their reach. We can put this proposition in another concrete form by saying that unless there

was a substantial value in this sixty acres over and above the indebtedness which was a lien thereon, which value could have been subjected to the payment of the judgment, there could not have been a fraudulent conveyance of the land to the mortgagee in payment of the debt. If there was not a substantial right or value in the sixty acres which could have been reached by execution, and made available in part payment of the debt, it must follow that the creditor lost nothing by the conveyance.

In Baldwin v. Rogers, 28 Minn. 544, 549, 11 N. W. 77, it was said:

"To make a debtor's transfer of property fraudulent as respects his creditors, there must be an intent to defraud, express or implied, and an act which, if allowed to stand, will actually defraud them, by hindering, delaying, or preventing the collection of their claims."

In Blake v. Boisjoli, 51 Minn. 296, 298, 53 N. W. 637, it was stated that, "to constitute any disposition of property fraudulent as to creditors, an essential element is that the thing disposed of must be of value, out of which the creditor could have realized the whole or a part of his claim, or, otherwise expressed, property which is appropriable by law to the payment of the debt." See also Leqve v. Stoppel, 64 Minn. 74, 66 N. W. 208.

Where such a conveyance has been made, as was remarked in one of the opinions before cited, the controlling fact is that the creditors are in no worse condition with it in force than they were before the grantor made a disposition of his property. They are deprived of nothing of value. The wisdom of this rule is illustrated by the present case. Had there been no conveyance to set aside, and all the right, title, and interest of the judgment debtor had been sold on execution, the creditor would not have received more than $40—not enough to cover the costs of sale, in all probability. This we must presume in the face of the finding as to value. This fact is of vital importance in determining whether fraud was intended or was actually perpetrated.

Proof of a fraudulent conveyance must be clear and satisfactory. It must be sufficiently strong and cogent to satisfy a man of sound judgment as to the truth of the allegation of fraud. To justify an inference of fraud as against a conveyance, there

must not only be an inadequacy of consideration, but it must have been so clearly below the market value as to strike the understanding at once with a conviction that such a conveyance never could have been made in good faith.

It is the settled law that a mortgagee may always purchase from the mortgagor his right of redemption, for a fair consideration, if the transaction is untainted by any oppression or advantage taken by the mortgagee of the necessities of the mortgagor. De Lancey v. Finnegan, 86 Minn. 255, 90 N. W. 387.

And here the fact may also be taken into consideration that foreclosure of the mortgage would but add to the financial burden already resting upon the property, and still further reduce the debtor's interest or equity. The mortgagor had a right to consider this, and the mortgagee also had the right to purchase the equity of redemption, get immediate possession of the property, and avoid the expenses of foreclosure, thus increasing the debt, which had been running for many years without any payments. There was no lack of a fair and adequate consideration for the deed, and it was not tainted with any oppression or advantage taken over either mortgagor or judgment creditor.

Again, it must be borne in mind, when considering and comparing the value of this land with the amount of the judgment, that a sale thereof upon execution would necessarily be made subject to the inchoate, contingent interest held by the debtor's wife. This interest would not pass by execution sale (Dayton v. Corser, 51 Minn. 406, 53 N. W. 717),[2] and would become equal to one-third of the value of the land, should the wife survive her husband, so that it is evident that the actual value of the husband's interest in the land would be much less at an execution sale than the value as fixed by the court below.

As bearing upon the statement that, in ascertaining the amount due upon the notes, interest was compounded, it may be said that the debtor was under a moral, although not under any legal, obligation to pay interest on overdue interest, and this may also be considered in determining whether there was fraud in the transaction. We are therefore of the opinion that the findings of fact

[2] See opinion on page 440.

in reference to the fraudulent conveyance of the land were wholly unsupported by the evidence, and it must follow that the coinciding conclusion of law was not justified.

2. We now come to a consideration of the chattel mortgage. As we have heretofore said, there was no finding that the promissory note of $300 was not a bona fide debt, and the presumption is to the contrary. If so, it is impossible to uphold the conclusion of the trial court that this mortgage was made with an intent to hinder, delay, or defraud the judgment creditor. It seems to have been treated below as if it had been made within four months of the act of bankruptcy, and therefore, within the provisions of the federal statute, to be set aside as a matter of law. The national bankruptcy act superseded the insolvency law of this state when enacted, in 1898. Foley-Bean Lumber Co. v. Sawyer, 76 Minn. 118, 78 N. W. 1038. Under that act, only such preferences as have been given within four months before filing a petition in bankruptcy are declared voidable and can be attacked. The mortgage was executed more than six months before the bankruptcy petition was filed, and was nothing more than a preference made by the debtor, and was not forbidden by law. It could not be set aside upon the ground of fraud without showing that it was based upon an unwarranted claim that the note it was given to secure was without consideration, and therefore a fraud upon real creditors. We have no domestic law which will prevent a debtor from preferring and securing a bona fide creditor, if he chooses so to do; and this was true when the state insolvency law was in force, for except as forbidden by that law, debtors might prefer creditors, and, in the absence of actual fraud, such preferences were valid, and would be upheld. Davis v. Cobb, 81 Minn. 167, 83 N. W. 505.

No further assignments of error need be considered.

The order appealed from is reversed, and the case remanded, with directions to enter judgment for the defendants unless the court below shall be of the opinion, upon proper application made, that a new trial should be granted.

On July 3, 1903, the following additional opinion was filed:

PER CURIAM.

In the brief of counsel for appellant in this case it was stated by way of argument that the inchoate contingent interest held by the wife in her husband's real estate does not pass upon an execution sale of his realty; Dayton v. Corser, 51 Minn. 406, 53 N. W. 717, being cited. This point was not referred to by counsel for respondent, so it was assumed that the law continued to be in accordance with the conclusion in the Dayton case. Laws 1901, p. 34, § 1 (c. 33), was not brought to our notice by counsel. By that enactment "such lands as have been divested by execution sale" were expressly excepted from the theretofore existing statutory rule regulating the descent of real property. Obviously, this statute was passed with reference to Dayton v. Corser, and for the express purpose of changing the law as therein announced. Our conclusion in this particular case is not affected in any way by the fact of that statute, but there is no force in what was said in the opinion, predicated upon that case.

