LYMAN G. McKINLEY v. STATE OF MINNESOTA AND OTHERS.[1]

March 3, 1933.

No. 28,992.

[1]Reported in 247 N. W. 389.

326

*Walter U. Hauser,* for appellant.

*Henry N. Benson,* Attorney General, *H. M. Feroe,* Assistant Attorney General, and *Leonard Keyes,* for respondents.

DIBELL, JUSTICE.

Action to have a cancelation of a contract for the sale of land pursuant to G. S. 1923, § 9576, as amended, 2 Mason, 1927, id., by the giving of 30 days' notice, adjudged inoperative and void for the

reason that the contract was but the continuation of a prior mortgage given to the state pursuant to the provisions of the rural credits statute, 1 Mason, 1927, § 6030, et seq; that the right of the owner under the contract could be terminated only by the usual foreclosure sale with a year's right of redemption; and to enjoin the defendants from interfering with plaintiff's possession. There was judgment to the effect that the notice terminated the plaintiff's interest in the land and that the state was the owner.

The facts now to be stated are found by the court from stipulated facts or upon sufficient evidence.

On June 7, 1924, Harriet B. McKinley, then unmarried, owned 325 acres of land in Dakota county. She was the daughter of Lyman G. McKinley, the plaintiff, from whom she had purchased. She married George Lowell Brown on April 20, 1925. On June 7, 1924, she gave a mortgage to the state for $15,000 on the 325 acres pursuant to the provisions of the rural credits statute, 1 Mason, 1927, § 6030, et seq. on the amortization plan at five and one-quarter per cent interest.

On June 7, 1928, the mortgage was unpaid, and six instalments of $468.75 each, amounting to $2,812.50, were overdue, and there were delinquent taxes of $2,000.55, making in these items $4,813.05 chargeable against the mortgaged property in addition to the $15,000, except, as we understand it, $8,000 of the $15,000 which was intended to be used for improvements and the like had not all been advanced by the state and the balance was taken into account in fixing the amount chargeable against the property, which the parties admit to be about $17,168.80 at the time of the June, 1928, deed and contract now mentioned. On this date Mrs. Brown gave a quitclaim deed to the state, and the state gave her a contract in the ordinary form to convey to her on the payment of this sum in 71 amortization instalments maturing six months apart.

A notice of cancelation was given some two years after the making of the quitclaim and the contract for deed. The court finds that it was the intention of Mrs. Brown to release her equity of redemption and take the contract for a deed; that is, to terminate

the mortgage relationship and substitute another. It finds that at the time of the service of notice of cancelation she was sane and able to manage her property and affairs; that she had competent legal counsel; and that she was a well educated and capable woman.

From the facts found three questions arise:

(1) Whether the transfer of the land from Mrs. Brown and the contract back were effective according to their terms, or there still remained a mortgage relationship so that the right of Mrs. Brown could be terminated only by foreclosure and the lapse of a year of redemption.

(2) Whether, if the deed of June 7, 1928, and the contract back were effective in accordance with their terms, the mental condition of Mrs. Brown avoided the otherwise effective cancelation of the contract.

(3) Whether the value of the land was such as to require a finding that the deed and the contract for a deed constituted a continuation of the mortgage so that a foreclosure was necessary to divest title; and whether the value was such as to require a finding that a wrong was done Mrs. Brown or an advantage taken of her in view of her mental condition.

■ The legal title of the land was in Mrs. Brown when she made the $15,000 mortgage of June 7, 1924. This is so though the proceeds of the mortgage loan were used to buy the land. The state was the mortgagee. The deed of June 7, 1928, from Mrs. Brown to the state put the title in the state; and the contract back of the same date gave her the equitable title. The legal title stood in the state as security for the payments promised to be made. The state could terminate Mrs. Brown's equitable title upon 30 days' notice in accordance with the provisions of G. S. 1923, § 9576, as amended, 2 Mason, 1927, id. unless the prior mortgage relationship continued and prevented.

There was nothing in the law preventing Mrs. Brown at the time of the transaction on June 7, 1928, transferring such title as she had to whomsoever would buy it; or she could transfer it to the

state, which held the mortgage, in extinguishment of the mortgage debt; or, extinguishing the mortgage debt by her deed, she could take a contract for a deed, terminable under § 9576. What she could not do in June, 1928, or at any other date, was make a mortgage which at the time of its making was terminable otherwise than upon foreclosure.

There is no longer in this state a presumption that a transfer by a mortgagor to his mortgagee is given as further security or as a new form of security or additional security. G. S. 1923 (2 Mason, 1927) §§ 9573-9575. Formerly the rule was different. See DeLancey v. Finnegan, 86 Minn. 255, 90 N. W. 387; Holien v. Slee, 120 Minn. 261, 139 N. W. 493; Jentzen v. Pruter, 148 Minn. 8, 180 N. W. 1004; Roehrs v. Thompson, 179 Minn. 73, 228 N. W. 340; Simpson v. First Nat. Bank (C. C. A.) 93 F. 309. The rule now is that a mortgagor, after the mortgage has been executed and delivered, though not before nor as a part of the mortgage transaction, may convey directly to the mortgagee and eliminate his title. Whether he does so is a question of fact. The case before us is not that of a conveyance by a mortgagor to a mortgagee in satisfaction of a debt, with a consequent ending of all relationship between them. Mrs. Brown intended, as the court found on sufficient evidence, to eliminate her title and terminate her mortgage liability and make a different arrangement to save her land. She gave a deed to the state and received a contract for a deed payable in instalments on long time, to which § 9576 applied. She was sane, knew what she was doing, and contemplated the loss of her equitable title under the contract if she did not pay. There was no longer a mortgage debt. A different arrangement was made. She appreciated what it all meant. Among the cases bearing upon such a situation and sustaining the conclusion reached here are Sanderson v. Engel, 182 Minn. 256, 234 N. W. 450; Westberg v. Wilson, 185 Minn. 307, 241 N. W. 315; Investors Syndicate v. Horrigan, 186 Minn. 599, 244 N. W. 65, and cases cited in these three cases. And see 4 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 6150, 6166; 41 C. J. p. 329, § 95; id. p. 331, § 96; id. p. 337, § 100.

■ Mrs. Brown was adjudged insane on March 4, 1929. She was in the hospital until April 14, 1929, when she was paroled. She was formally discharged by the probate decree on May 13, 1930, the day after notice of the termination of the contract was served upon her. No guardian was appointed. The court found that she was not insane at that time. On June 27, 1930, she conveyed her interest in the land to the plaintiff.

The fact that the proceeding to terminate Mrs. Brown's interest in the property was instituted the day before her formal discharge by the probate court does not render it invalid. The proceeding under G. S. 1923, § 9576, as amended, 2 Mason, 1927, id. has been referred to as a statutory foreclosure, something akin to a foreclosure under a power of sale in a mortgage. So a foreclosure of a mortgage, though the mortgagor throughout the foreclosure is insane, is not of itself invalid. Lundberg v. Davidson, 68 Minn. 328, 71 N. W. 395, 72 N. W. 71; Id. 72 Minn. 49, 74 N. W. 1018, 42 L. R. A. 103. In the latter case Mr. Justice Mitchell said [72 Minn. 54]:

"A foreclosure under a power is a proceeding in pais as well as in rem; and the fact that one of the terms of the exercise of the power is the service of the notice upon the occupant of the premises does not change the proceeding into a judicial one, or into a personal action against such occupant. Such a notice is in its nature analogous to notice to a tenant to quit, or a notice of a dishonored promissory note or bill of exchange. Where the notice required is a personal notice, it does not matter that the person upon whom it is served is an infant, or insane, or under any other disability. Of course such disabilities cannot be used to gain an improper advantage; and, if they are, the court will set aside the sale. * * * But no case can be found which holds that a sale under a power coupled with an interest is void on the ground that the mortgagor, or any person upon whom notice is to be served, is insane, or under any other disability."

■ The question of the value of the mortgaged property in 1928 was litigated. The fact was of incidental importance upon the claim

of Mrs. Brown that the mortgage relation was still to exist after the quitclaim and the contract for a deed were executed, so that a foreclosure was necessary to eliminate her interest; and upon the question whether advantage was taken of her mental condition.

A witness in the service of the rural credit bureau put the value in 1928 at $40 per acre. The foundation for his testimony was not good. His knowledge of the particular property was limited. He said that the state would be glad to get $40 per acre for it. Mrs. Brown put the value at $125 to $150 per acre. She had in mind the division of the land into smaller tracts and separate sales. Her testimony was not such as to impress the trial court, which found the value since 1928 was not in excess of $40 per acre, though the state had invested in it in excess of $50 per acre. We see nothing in the evidence suggestive of such a value in 1928 that Mrs. Brown would not make the bargain which the court found that she made; nor such a value at any time suggestive of advantage taken on the part of the state. The state, not she nor her father, to whom she assigned, has been the loser.

Judgment affirmed.

