## SPRAGUE v. VOGT et al.
### No. 13588.

Circuit Court of Appeals, Eighth Circuit.
Nov. 4, 1947.

M. E. Culhane, **of** Minneapolis, Minn., for appellant.

Joseph F. Cowern, of St. Paul, Minn. (Victor J. Michaelson, of St. Paul, Minn., on the brief), for appellees J. Lisle Jesmer, Ganlisle Holding Co., and Jesmer Co.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

In this case J. M. Sprague, trustee in bankruptcy of the estate of the Baltimore Investment Company, a Minnesota corporation, brought a plenary suit in the district court to set aside certain transfers of real and personal property of the corporation claimed to have been made in fraud of its creditors and to adjudge the title to the property to be in the plaintiff trustee. The property involved consists of an apartment house known as the Piedmont Apartments comprising about 144 rental units and its furnishings situated in St. Paul, Ramsey County, Minnesota. At the time the suit was commenced title to both the real property and the furnishings was vested in The Jesmer Company, a corporation, subject to a first mortgage for $25,000 to the Minnesota Federal Savings and Loan Association and a second mortgage for $11,000 to Dorothy A. P. Burns and Alvin B. Christofferson to secure notes held by them in the amounts of $8,500 and $2,500 respectively.

The trial court entered a summary judgment of dismissal and on appeal to this court the judgment was affirmed on July 30, 1945, in so far as the validity of the mortgage liens on the real estate is concerned, and was reversed as to other issues. 8 Cir.,

150 F.2d 795. On remand the remaining issues were tried to the court without a jury. The court filed an opinion and made findings of fact, holding that the plaintiff failed to sustain his burden of proving that the transfers of either the real or the personal property were conveyances in fraud of creditors, and judgment was entered for the defendants. The judgment provided that the defendants J. Lisle Jesmer, Ganlisle Holding Company and The Jesmer Company have judgment for costs. The plaintiff appeals.

The Baltimore Investment Company was adjudicated a bankrupt on a petition filed March 4, 1943, and the plaintiff-appellant was thereafter elected and qualified as trustee. The present plenary suit was filed June 16, 1944, under authority of Title 11 U.S.C. § 110, the pertinent parts of which are copied in the footnote.[1]

The Baltimore became the owner of the Piedmont Apartments about August 1, 1933. In 1937 Mrs. Burns, holder of the present second mortgage on all of the property, acquired a first mortgage on the real property which she foreclosed in the state court. The amount due on the mortgage at the time of foreclosure was about $11,000. In that proceeding she received a sheriff's certificate of sale dated January 22, 1940, from which no redemption was made. Neither the validity of Mrs. Burns' mortgage nor her right to foreclose it and purchase the property is questioned.

The appellee J. Lisle Jesmer owns and controls the appellees Ganlisle Holding Company and The Jesmer Company. The record title to all of the property, real and personal, is now in The Jesmer Company. Title was taken, as will appear hereinafter, in the Holding Company and concededly transferred to The Jesmer for convenience only.

Although the pleadings and exhibits are lengthy the issues on this appeal are comparatively simple. The pleadings are reviewed at length in our opinion on the first appeal. Counsel for appellant has directed attention in his printed brief to the two conveyances claimed to be fraudulent and upon the validity or invalidity of which the rights of the parties depend. They are, first, a failure to redeem from the mortgage foreclosure sale of the real property which occurred on January 22, 1940, and, second, the giving by the bankrupt of a bill of sale of the chattel property consisting of the furniture, fixtures and equipment in the apartment building to the Ganlisle Holding Company on February 14, 1941. Both conveyances are claimed to have been fraudulent as to the creditors of the bankrupt on the ground that they were without consideration.

In reviewing the record to determine the merit or want of merit of these contentions the law of Minnesota is controlling. In Aretz v. Kloos, 89 Minn. 432, 95 N.W. 216, 218, 769, the Supreme Court

---

[1] Sec. 110(a) "The trustee of the estate of a bankrupt * * * upon his * * * appointment and qualification, shall * * * be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition in bankruptcy * * * to all * * * (4) property transferred by him in fraud of his creditors; * * *.

* * * * * * *

"(e) (1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

"(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whomever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision e is valid under applicable Federal or State laws.

"(3) For the purpose of such recovery or of the avoidance of such transfer or obligation, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

314

of Minnesota said: "Proof of a fraudulent conveyance must be clear and satisfactory. It must be sufficiently strong and cogent to satisfy a man of sound judgment as to the truth of the allegation of fraud." In Baldwin v. Rogers, 28 Minn. 544, 11 N.W. 77, 79, the court said: "To make a debtor's transfer of property fraudulent, as respects his creditors, there must be an intent to defraud, express or implied, and an act which, if allowed to stand, will actually defraud them by hindering, delaying, or preventing the collection of their claims."

We shall first consider the failure to redeem the real property from the foreclosure sale.

In the first place it is clear that, unless the failure of the bankrupt or its creditors to redeem within the period of redemption provided by law was the result of some fraudulent act in which Mrs. Burns participated, the record title to the real property which she acquired by foreclosure is valid against the claims now asserted by the trustee. In the absence of such fraud the bankrupt and its creditors lost all right, title and interest in the Piedmont real property more than two years before the petition was filed on which the Baltimore was adjudicated a bankrupt.

The contention of the appellant is that sometime prior to January 9, 1941, E. C. Vogt acting for the Baltimore Investment Company, J. Lisle Jesmer acting for the Ganlisle Holding Company, and Mrs. Burns entered into an oral agreement by the terms of which the Baltimore agreed, without receiving any consideration therefor, not to make a record redemption from Mrs. Burns' foreclosure sale. The complaint then alleges that to carry out this fraudulent oral agreement Mrs. Burns on January 9, 1941, gave Ganlisle Holding Company an option in writing wherein she agreed to take title by virtue of her foreclosure sale, if no redemption were made, and then convey the real estate to the Ganlisle Holding Company; that on January 22, 1941, before the expiration of the year for redemption, Mrs. Burns entered into a contract for deed with the Ganlisle Holding Company; and that the fraud was consummated on May 24, 1941, when Mrs. Burns and her husband

executed and delivered a quitclaim deed conveying the property to the Ganlisle Holding Company.

The difficulty with appellant's contention in respect of this alleged fraudulent scheme is that it is not supported by the evidence. The only testimony claimed to support such contention is the statement of E. C. Vogt who testified that the general understanding was that there would be no redemption. The contention is inconsistent with the contract for deed executed January 22, 1941, between Mrs. Burns and the Ganlisle Holding Company. That contract provided that "It is expressly understood and agreed that this contract shall not be effective until the time for redemption from the foreclosure shall expire as to all parties who have the right to redeem therefrom." The finding of the court is—

"That by the express terms of said contract [for deed] the right of redemption that either the Baltimore Investment Company or its creditors had were recognized, and that said contract was not made for the purpose of preventing the Baltimore Investment Company or any of its creditors from redeeming from such foreclosure sale, neither was said contract entered into for the purpose or with the intent of defrauding said Company or any of its creditors; that at that time it was financially impossible for the Baltimore Investment Company to redeem from said foreclosure sale, and that neither said Company nor any of its creditors, nor any other person did redeem from such foreclosure sale, and that by reason thereof the said Baltimore Investment Company was divested of its title and interest in and to said 'Piedmont' property, and the title thereto passed by reason thereof to Dorothy A. P. Burns."

The whole picture presented by the pleadings and the testimony supports the finding of the court that the failure of the Baltimore to redeem from the foreclosure sale was not due to any agreement between Vogt and Mrs. Burns and Jesmer but was because "at that time it was financially impossible for the Baltimore Invesment Company to redeem. * * *"

The complaint alleges that on December 31, 1940, and at all times thereafter the only

property owned by the Baltimore Investment Company was the Piedmont Apartments and the furniture and fixtures therein; and that the real property was subject to Mrs. Burns' sheriff's certificate of sale amounting to about $11,000. At the same time part of the personal property was subject to an unpaid balance of $3,200 on conditional sales contracts as well as to a chattel mortgage for $10,000 on which about $11,000 was due. Prior to that time the Apartments had been sold for taxes approximating $38,000, and the time to redeem from such sale would expire about June 1, 1941. There were also unpaid gas, water and light bills and numerous other unpaid debts. The building was in a run-down condition. A new roof was needed; the elevator was in need of repairs and the furnishings were worn and old. The company was also in a receivership proceeding in the state court and an involuntary bankruptcy proceeding was pending in the federal court.

During the year 1940 E. C. Vogt, owner of a controlling interest in the company, had sought, without success, financial aid to refinance the company and to save something from the financial wreckage. In the latter part of the year he began negotiations with Jesmer resulting in an agreement dated December 31, 1940, which was modified and supplemented by a further agreement dated May 22, 1941. These contracts were the subject of litigation in the state court resulting in a holding that they were option contracts only which had expired by their own terms. See Vogt v. Ganlisle Holding Company, 217 Minn. 601, 15 N.W. 2d 91. In view of our conclusion that we must affirm the court's finding that the Baltimore's failure to redeem from Mrs. Burns' foreclosure sale was not in any way tainted with fraud, the terms of these contracts are immaterial here. In no way do they show that the Baltimore was able to redeem from Mrs. Burns' foreclosure or that failure to redeem was the result of fraud.

On February 26, 1941, pursuant to an application of Mrs. Burns made after the year for redemption from her foreclosure sale had expired, an order was entered in the district court of Ramsey County, Minnesota, after notice to the Baltimore and many of its creditors, for a new Torrens certificate of title to the real property subject to a contract for deed to the Ganlisle Holding Company. Appellant contends that this was a part of the alleged fraudulent agreement whereby the Baltimore failed to redeem from the foreclosure sale. This contention in fact in no way strengthens the claim that Mrs. Burns and Vogt agreed that the Baltimore would not redeem. Further, the order can not be attacked collaterally in this proceeding. The order operates as an estoppel by judgment against such a claim by the Baltimore, by its creditors, and by the trustee representing their rights. McWhinney v. Gage, 183 Minn. 141, 235 N.W. 676; Henry v. White, 123 Minn. 182, 143 N.W. 324, L.R. A.1916D, 4.

Appellant's second contention relates to the conveyance by the bankrupt of the furniture, fixtures and equipment of the Piedmont Apartments. On February 14, 1941, the Baltimore, allegedly without consideration, gave to the Ganlisle Holding Company a bill of sale covering all the chattel property belonging to the corporation in the Piedmont Apartments. As to this issue the court found " * * * that the Jesmer Company [Ganlisle Holding Company] acquired title to such personal property in good faith and for a valuable consideration and without fraud upon or intent to defraud either the Baltimore Investment Company or any of its creditors. * * *"

This finding is supported by substantial evidence and can not, therefore, be disturbed by this court. Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following section 723c.

J. Lisle Jesmer, after qualifying, testified that he had examined all the personal property in the apartment building; that the frigidaires were worth about $5,000 subject to the lien of conditional sales contracts of $3,200, making a net value of $1,800 to $2,000, and that the rest of the furniture, if taken out of the building, would not bring more than $1,500 to $2,000. In the receivership proceeding pending in the state court this personal property was appraised at $10,406.45 considered as "at-

tached to the Piedmont Apartment as a going place of business." At the time the bill of sale was given the personal property was subject to a chattel mortgage of about $11,000, as well as to the conditional sales contracts referred to above. Under these circumstances the court concluded "that the Baltimore Investment Company did not lose anything by the transfer and conveyance of the personal property."

The contentions of the appellant on this appeal are all without merit. Clearly the court had jurisdiction of the parties and of the subject matter of the suit. It is equally clear, also, that the relevant findings of the court are supported by substantial evidence and that these findings support the judgment. Accordingly the judgment appealed from is affirmed. The costs in this court will be taxed to the appellant.

Affirmed.