### ADELE GUERIN vs. MARY MOORE and Husband.

#### January 23, 1879.

Dower in Lands aliened by Husband—Valuation.—Under Gen. St. c, 48, § 7, when lands have been aliened by the husband in his life, and the lands have been enhanced in value from any cause since the alienation, the widow's dower, in assigning it to her, is to be estimated according to their value at the time of the alienation, without regard to any subsequent increase in their value.

Same—Inchoate Right of Dower.—In cases of inchoate right of dower, at the adoption of the Revised Statutes of 1851, there was no accrued or established right to the measure of dower provided by the laws of Wisconsin then in force, and repealed by those statutes, to be preserved by their saving clause. The inchoate right of dower is merely the right to such quantum of interest in the lands of the husband as the law in force at his death may allow to the widow.

Appeal by plaintiff from a judgment of the district court for Ramsey county, where the action was tried before *Brill,* J., a jury being waived.

*C. S. Bryant* and *W. P. Clough,* for appellant.

*Morris Lamprey,* for respondents.

GILFILLAN, C. J. Plaintiff and Vetal Guerin were married, in 1841. Afterwards, and prior to December 14, 1849, he became seized in fee of real estate now owned by defendant, and on that day conveyed the same to one Messeau, from

whom defendant derives her title. Guerin died, November 11, 1870, leaving the plaintiff his widow, who brings this action for an assignment of her dower in the property. The court below assigned it to her, taking, as the basis upon which to estimate it, the actual value of the real estate at the time when it was conveyed to Messeau. Plaintiff appeals. The only question is, was she entitled to have the dower estimated upon the basis of the value of the land at the time it was assigned to her, excluding any increase in value caused by improvements put on the land by Guerin's grantees?

Gen. St. *c.* 48, § 7, the law in force at the date of Guerin's death, when the plaintiff's right to dower became a fixed and perfect right, would seem clearly enough to negative this. It reads.: "When a widow is entitled to any dower out of any lands aliened by the husband in his lifetime, and such lands have been enhanced in value after the alienation, such lands shall be estimated in setting out the widow's dower *according to their value at the time when they were so aliened.*" The plaintiff contends that the common-law rule gave the widow the benefit of any increase in value of the land arising from extrinsic causes, between the alienation and the assignment of the dower; and because authors and judges have used, to express the common-law rule, the phrase "according to the value at the time of the alienation," the fixed legal signification of the words we have italicised, expresses such common-law rule, and they were used by the legislature in that sense, and not with their ordinary meaning. But the courts in New York use the same form of words to express the common-law rule, as understood by them, yet those courts have uniformly held that at the common law the widow was not entitled to the benefit of an increase in value from any cause after the alienation; so it cannot be said that the words had a special meaning, differing from the ordinary meaning, so well settled that we are to presume the legislature used them in any other than the ordinary and popular sense. And

it is certainly suggestive that the section we are considering was continued from the Revised Statutes of 1851, which repealed an act of the legislature of Wisconsin establishing the rule that the plaintiff contends for here. We have no doubt the legislature intended, in section 7, just what the ordinary sense of the words used imports, and that, in estimating dower in lands aliened in the husband's lifetime, the value must be taken at the time when so aliened, without regard to any subsequent increase in value, from whatever cause.

As we have stated, there was a statute of Wisconsin in force at the time of Guerin's alienation, which established the rule contended for by plaintiff. This statute was repealed by Rev. St. 1851, c. 137, § 1. But section 4 provided that "the repeal of the acts mentioned in this chapter shall not affect any act done, or right accrued or established, or any proceeding, suit or prosecution, had or commenced in any civil action or proceeding, previous to the time when such repeal shall take effect; but every such act, right or proceeding shall remain as valid and effectual as if the provisions so repealed had remained in force." Plaintiff claims that this saved to her a right to have her dower, whenever her husband might die, assigned to her according to the measure established by the repealed statute; in other words, that a right to that quantity of dower in her husband's lands had accrued to her, within the meaning of the word "accrued" in the saving clause. Whether this is so, depends on the character of an inchoate right to dower. Whatever doubts may have once existed on the point, it is now well settled that the right, while inchoate, is wholly within the control of the legislature. The supreme court of the United States, in *Randall* v. *Kreiger*, 23 Wall. 137, 148, speaks of it as "the creature of the law," and says: "During the life of the husband, the right is a mere expectancy or possibility. In that condition of things, the law-making power may deal with it as may be deemed

proper. It is not a natural right. It is wholly given by law, and the power that gave it may increase, diminish, or otherwise alter it, or wholly take it away. It is upon the same footing with the expectancy of heirs apparent or presumptive, before the death of the ancestor. Until that event occurs, the law of descent may be moulded according to the will of the legislature. Laws upon those subjects, in such cases, take effect at once in all respects as if they had preceded the birth of such persons then living. Upon the death of the husband and the ancestor, the rights of the widow and the heirs become fixed and vested," with a query whether the legislature can increase the dower as against a purchaser from the husband. We regard this to be a good definition of the inchoate right to dower. It is merely a right (if it may properly be called a right) to such interest in the lands of the husband as may be allowed by the law which shall be in force at his death. It is not a fixed or accrued right to an ascertained or established quantum of interest, to become vested upon the contingency of the husband dying before the wife. The only particular in which it differs from the expectancy of an heir presumptive is that the wife's right to such dower as the law in force at the husband's death may allow her, attaches to the land upon marriage and seisin, and cannot be defeated by act of the husband, while the heir's expectancy may be defeated by act of the ancestor.

At the time of the adoption of the Revised Statutes of 1851, the plaintiff had no accrued or established right to any ascertained quantum of interest in her husband's lands, in case he died first, and therefore no such right was preserved by the saving clause in those statutes.

Judgment affirmed.