ANGELINE GOODWIN and others *vs.* CHRISTIAN F. KUMM and others.

June 5, 1890.

**Rebutter by Collateral Warranty.**—The doctrine of rebutter by collateral warranty is not a part of the common law of this state.

**Husband and Wife — Right of Survivor in Lands Conveyed during Covertuce.**—Under Gen. St. 1878, c. 46, § 3, it is only the interest of the surviving wife in lands of which the husband died seised or possessed which is "subject, in its just proportion with the other real estate, to the payment of such debts of the deceased as are not paid from the personal estate."

Appeal by plaintiffs from a judgment of the district court for Fillmore county, where the action was tried by *Farmer, J.*

*Burdett Thayer*, for appellants.

*H. R. Wells*, for respondents.

MITCHELL, J. This was an action for the partition of certain lands of which plaintiffs allege they are the owners of one undivided third, and the defendants of the other undivided two-thirds. The agreed facts are that in April, 1878, one John R. McKisson, being then the owner of the land in question, conveyed it, with full covenants of warranty, for a consideration greater than its present value, to defendants' grantor, his wife, Annie Mary McKisson, not joining in the deed, and never having in any manner assented thereto in writing. John R. McKisson died intestate in February, 1885, and his wife, also intestate, in November, 1886. The plaintiffs are their only children, and consequently the heirs-at-law of each of their parents. "The plaintiffs took no property whatever as heirs-at-law aforesaid, except they make claim to one-third of the lands aforesaid." Plaintiffs claim title to the third as heirs of their mother, and defendants title to the whole under the deed referred to from plaintiffs' father. Some other facts were stipulated which defendants urge as a ground of estoppel *in pais* against plaintiffs, but, as they are clearly insufficient for any such purpose, we omit them as being wholly immaterial. The court below gave judgment for defendants upon the ground of an estoppel and rebutter of plaintiffs by the covenants in the deed of their father to defendants' grantor. As plaintiffs are claiming under their mother, these covenants are, as to them, collateral, and not lineal. And, if the court intended to apply the ancient English doctrine of rebutter by collateral warranty, we have no hesitation in holding that this doctrine is not, and never was, any part of the common law of this state. It was based upon the mere presumption that the heir might thereafter take assets by descent from or through the same ancestor. 2 Bl. Comm. 302. Being founded on neither reason nor justice, both English and American judges have united in denouncing the whole doctrine as unjust and indefensible. It has never been generally adopted in the United States. 4 Kent, Comm. (12th Ed.) 469; *Russ* v. *Alpaugh*, 118 Mass. 369. Indeed, even in England,

ever since the statute of Gloucester, (A. D. 1278,) over 600 years ago, the doctrine would not have applied to the facts of this case; for that statute provided that the warranty of the father should not bar the son, who was the heir of both parents, from claiming the land in the right of his mother, except so far as assets descended to him from the father.

But we apprehend that the principal ground upon which the court below decided the case, as it is the principal one urged here by counsel, was, to quote the language of the learned judge in his memorandum: "The mother took the title to this undivided third of the land, subject, in its just proportion with other real estate, to the payment of such debts of the father as are not paid from his personal estate; and, if plaintiffs take one-third of the land, that would constitute a breach of the covenants in the father's deed, the damage for which (equal to the value of the land) would be a valid debt or claim against the father's estate; and, as there does not appear to be any personal estate or any other land except this one-third, then, as it will take the whole of this third to pay this claim, therefore, to avoid circuity of action, the rule of rebutter should apply."

The statute under which the wife took this third is as follows: "Such surviving husband or wife shall also be entitled to and shall hold in fee-simple, or by such inferior tenure as the deceased was at any time during coverture seised or possessed thereof, one equal undivided one-third of all other lands [other than the homestead] of which the deceased was at any time during coverture seised or possessed, free from any testamentary or other disposition thereof to which such survivor shall not have assented in writing, but subject, in its just proportion with the *other* real estate, to the payment of such debts of the deceased as are not paid from the personal estate." Gen. St. 1878, *c.* 46, § 3. It will be observed that the entire reasoning of the trial judge, as well as that of the defendants' counsel here, proceeds upon the theory that this undivided third, if recovered by the heirs of the wife, would itself be assets for the payment of the husband's debts; for otherwise the doctrine of estoppel in order to prevent circuity of action could have no application. And, if it would be assets at all for that purpose, it would be such for the pay-

ment of all debts, at least in its just proportion "with other real estate;" for it would be no more liable for a debt arising out of a breach of these covenants than for any other debt of the husband.

But, conceding for the present that this third would, if recovered, be assets for the payment of the husband's debts, the facts stipulated are entirely insufficient to make a case for the application of the doctrine of estoppel. According to defendants' own theory, the title to this undivided one-third vested in the wife subject only to the payment, in its just proportion with other lands, of debts not paid from the personal estate. By the laws of this state the personal estate, and after it the real estate, of a deceased person, is liable, in due course of administration, for the payment of his debts; and the remedy of creditors must ordinarily be sought only by presenting and proving their claims in the administration proceedings, and obtaining payment out of the personal property, or, if necessary, by sale of the real estate under license from the probate court; and the heirs or devisees are not liable to an action by creditors, even if they have received assets, except in the case of a contingent claim which did not become absolute until after the administration had been taken out, and the estate fully settled, or, at least, the time limited for creditors to prove their claims had expired. Hence, to entitle defendants, in any view of the case, to invoke an estoppel, it was incumbent on them to show that the estate of the husband had been administered on, and that there were no assets remaining out of which to pay their claim. The trial court seems to have assumed that the agreed facts showed this. But this was clearly a mistake. The stipulation is merely to the fact that the plaintiffs have taken (received) no property as heirs, (either of the father or mother,) except that they make claim to this third of these lands. It does not appear from this that administration has ever been taken out at all on the husband's estate, or, if so, that there is not ample personal property to pay all debts in full, or, if not, that there are not other lands subject to the payment of debts. All that this third is liable for, according to defendants' own theory of the law, is the payment in its just proportion with other lands of the debts after the personal estate is exhausted; and yet, notwithstanding there may be ample personal estate as well

as "other lands," it is proposed by this doctrine of estoppel to saddle the entire burden of paying this debt upon the interest of the wife's heirs in this land. Such a course would likewise result in appropriating this interest to the payment of this one claim, to the exclusion of other creditors who are equally entitled to share in it, if it be assets at all for the payment of debts. The law is not so eager to avoid circuity of action as to do such gross injustice in order to effectuate it.

This would be decisive of the present appeal; but we are not inclined to rest the decision upon grounds that may not be decisive of the action on the merits as they may appear upon another trial. It seems to us that counsel are entirely mistaken in assuming that the third interest of the surviving wife in land of the husband, conveyed by him during coverture by his sole deed, is, or under any circumstances can be, subject to the payment of any part of his debts. After he has thus conveyed he has no longer any interest in it, and it is no part of his estate upon his decease. How, in view of this fact, it can be held to be assets for the payment of his debts, it is difficult to see. Had neither the wife nor her heirs claimed this land, no one would assert that the husband's creditors could subject it to payment of his debts, and yet, according to defendants' contention, the mere fact that the wife or her heirs do claim it makes it assets for the payment of these debts; and not only this, but the very assertion of this claim by the wife or her heirs creates the debt for which it is to be made liable. If this is true, all that a husband would have to do to effectually deprive a wife of her statutory interest in his real estate would be to convey it by his sole deed, with covenants, which, in case she claimed her third after his decease, would create the very debt against his estate which would prevent her recovery. The husband cannot thus do by indirection what the law prohibits him from doing directly. The fact that the land conveyed by the husband during coverture is no longer his property, and no part of his estate at his decease, is utterly inconsistent with the idea that the wife's interest is assets subject to the payment of his debts. The misconception of counsel arises out of the peculiar and somewhat misleading language of the statute. At common law, the

wife had dower in all lands of which the husband was seised at any time during coverture, whereof she had not relinquished her right. This dower was not subject to the payment of his debts, as it could not well be, for it might include lands which were no part of his estate at his decease. In many of the states dower is by statute limited to lands whereof the husband died seised; and in some states this statutory dower is subject to the payment of debts, as it consistently might be, for all the lands in which the wife could have dower would be part of his estate. But our statute has adopted the unprecedented plan of giving the wife a third of all lands which the husband has conveyed during coverture without her written assent, as well as of lands of which he died seised, and at the same time of making this third, in some lands at least, subject to a certain extent to the payment of the husband's debts. The only construction of this statute consistent with legal principles or in harmony with its general scope and object, is that it is only the wife's interest in the lands owned by the husband at the time of his death, and consequently a part of his estate, which is "subject, in its just proportion with the other real estate, to the payment of such debts of the deceased as are not paid from the personal estate." The expression "other real estate" clearly means real estate belonging to the deceased husband or wife, and the word "other" implies that the real estate which is to share with it the burden of paying debts is also the property of the deceased, which would not include property conveyed by him or her during life. This construction may have the effect of putting the survivor in a better position as to lands conveyed by the deceased than in those of which he or she died seised, but we do not see how the statute can admit of any other reasonable or practicable construction.

Judgment reversed.