GEORGE W. BYRNES and Others v. FRANCES SEXTON and Others.[1]

| 62 | 135 |
| 77 | 139 |

Aug. 6, 1895.

Nos. 9316—(168).

**Execution against Decedent's Estate—Lien of Judgment.**

G. S. 1894, § 5447, construed.   *Held,* that the right given to judgment creditors to have executions issued to enforce the collection of money judgments after the decease of judgment debtors is limited to cases where, and such executions can only be levied upon, real property on which, a lien has been acquired prior to the death of the debtor.

**Judgment Creditor of Decedent—Collection of Claim.**

A judgment creditor who has acquired no lien prior to the death of the debtor must proceed to establish and collect his claim as a general creditor, and in the due course of administration.

[1] Reported in 64 N. W. 155.

Action in the district court for Hennepin county. The case was tried before Hicks, J., who ordered judgment in favor of plaintiff Annie M. Filiatraut, and against the other plaintiffs. From an order denying a motion for a new trial the other plaintiffs appealed. Reversed.

*Babcock & Garrigues* and *E. C. Garrigues*, for appellants.

*Penney, Welch & Hayne, Thos. H. Quinn*, and *Hahn & Hawley*, for respondents.

COLLINS, J.[2]    Action in partition, brought by one of the plaintiffs as the widow, formerly, of one Byrnes, deceased, and by the others as his heirs at law, plaintiffs claiming to be the owners in their respective undivided rights of an undivided one-tenth of the premises in question. The defendants' title to this one-tenth depends wholly upon the validity of an execution sale made upon a judgment in which said Byrnes was the debtor and one Harriet Lamb the creditor. The court below ordered judgment upon the facts found in favor of the first-named plaintiff as to her share and against the heirs at law. The appeal is by the latter from an order refusing a new trial.

The facts are simple and undisputed. The premises are situated in Hennepin county. On January 6, 1876, the judgment was duly rendered and docketed in Rice county. Two years later, in 1878, the debtor died intestate, leaving no personal property. Whether administration was ever had on his estate does not appear. About five years afterwards, in 1883, and not before, a transcript of the judgment was filed, and, in form, the judgment was docketed in Hennepin county. One McCarthy, to whom the judgment had been assigned, then caused an execution to be issued, directed to the sheriff of Hennepin county, and the sale in question was made by virtue of this execution, McCarthy becoming the purchaser. No redemption was made from the sale, and in 1885, after the time for redemption had expired, McCarthy purchased from the then owners the other undivided interests in the property. These defendants have succeeded to his right and title, have made valuable improvements (just when was not shown), and have paid taxes up to the year 1891.

[2] Canty, J., took no part.

If defendants' claim of title to such interests or shares in the property in controversy as are involved in this appeal can be sustained and upheld, it must be by virtue of some statutory enactment which conferred upon the creditor the right and power to acquire a lien on the premises by filing a transcript and docketing her judgment in Hennepin county several years after the decease of her debtor. If she failed to secure a lien by reason of this docketing in 1883, or, to put it in another way, if there was no property on which the judgment could then become a lien, it will not be contended that any title whatsoever passed to the purchaser at the execution sale, so far as was shown by the record.

By G. S. 1894, § 5447, it is enacted that "notwithstanding the death of a party after judgment, execution thereon against his property may be issued and executed in the same manner and with the same effect as if he was still living, except that such execution cannot be issued within a year after his death." Possibly, if we were called upon to construe this section standing alone, its language would compel us to hold that subsequent to the decease of a judgment debtor it would be possible to docket the judgment in the county where rendered, or elsewhere, secure a specific lien on real property of which the debtor died seised, issue and levy an execution on such property, and satisfy the execution, with the same effect as if the debtor still lived. Indeed, the logic of such a decision would lead to the conclusion that personal property belonging to the estate could be seized and sold under like circumstances. But when construing this particular section of our statutes relating to executions we are obliged, under well-known rules, to examine and consider other sections which relate to and affect the same subject-matter. All must be construed together. We have quite a number of sections or parts of sections in G. S. 1894 which bear upon the question before us, and all of these to which we shall refer were in force when Byrnes died, and when the proceedings were had through which defendants claim ownership.

The rules which regulate and determine title to real property by descent in the absence of a testamentary devise are found in sections 4470, 4471, and it is clear that immediately upon the death of Byrnes, intestate, the title to the real property now in dispute vested in his widow and children subject to the payment of his debts.

The estate which so vested is frequently denominated an equitable estate, but it is fixed and certain. The creditors of the deceased, if there be such, have a general lien for the payment of their claims and demands, in the due course of administration, and of course there may be creditors who have specific liens on property, such as mortgagees and judgment creditors, whose lien rights have been fixed prior to the death of the debtor, of which rights they cannot be deprived. For the latter no legislation was necessary except as to regulating the method in which their lien rights might be enforced, and it is clear that, to the creditor who has secured his lien before the decease of his debtor, the language of section 5447 is applicable. It is also evident that the provision in section 4471 which expressly subjects the real property of the intestate to the payment of his debts has no reference to secured claims, whether specialty debts or statutory liens. It was simply designed to protect the general creditors, and is in line with the statutory system which we have for the establishment and payment of general claims out of the personal assets if sufficient, and, if not, then out of funds derived from a sale of the real property in due course of administration.

The statute which authorizes and provides for obtaining a judgment lien, how and upon what property a lien may be secured, is section 5425. The lien obtained by a docketing of the judgment originally, or by a transcript, is limited to such real property as the debtor may own in the county at the time of the docketing, and such as he may afterwards acquire within the life of the lien. While we often speak of property as belonging to the estate of one deceased, it would be absurd to contend that any one but a living person could be the owner of property, and equally as absurd to say that for the purposes of section 5425 the ownership of real estate continued in a person after his death. We might with equal force and reason assert that one deceased could acquire property—say, by inheritance—upon which a judgment lien could be had. If, then, the ownership of property terminates with death, as it must, and if the lands of an intestate pass instantly upon the decease to the heirs by operation of law, how could a lien be obtained in the case at bar upon which to base a valid execution sale of the property in dispute? That the title did pass to the widow and heirs, and that they immediately became the owners, subject to liens, general or

special, in favor of creditors, is beyond all question.   That the estate which the heir of an intestate acquires in his real property upon his decease is subject to alienation or devise, and also that it is subject to the lien of a judgment against such heir and to execution sale, as are other beneficial estates, is well settled.   A purchaser, whether at a voluntary or compulsory sale, acquires the estate of the heir, subject to the rights of the creditors.   1 Freeman, Exns., § 183, and cases cited.   If the widow and heirs at law had, upon the death of the judgment debtor, a vested interest or estate in the real property of which he died seised, which they could have alienated or devised, or upon which the lien of a judgment against either could have obtained, this interest and estate was subject only to such special liens as were against it at the time they acquired the same, and the claims and demands of ordinary creditors, to be proven and established in due course of administration.   A judgment creditor without a lien could not thereafter secure a superior right, not only as to them but as to other creditors, by docketing his judgment.   If he could, it would result in very serious complications in the settlement of estates, and serve to render titles received through such administration very insecure.   No one could purchase of an heir, or at an administration sale, or at a sale to satisfy an execution issued upon a judgment rendered against an heir or a devisee, with any assurance that he would not be deprived of the fruits of his purchase through the subsequent docketing of an unheard-of judgment. That certainty and security as to titles, in so far as they may be affected by judgment liens, which is afforded by our judgment dockets, would be swept away; for, if section 5447 is to be given the broad construction claimed for it, every judgment docket in the state would have to be examined before a purchaser could act with safety.   Even full and complete administration of the estate, including a sale of the property in question to satisfy and discharge established claims and demands, would not protect him.   See Fowler v. Mickley, 39 Minn. 28, 38 N. W. 634.

We are of the opinion that section 5447, when considered in connection with other statutes, to which we have referred, must be construed as limiting the right to have execution issued to enforce the collection of a money judgment after the death of the judgment debtor, and construed as simply and only authorizing such issuance in cases where, and such executions can only be levied on real prop-

erty on which, a lien has been acquired prior to the decease. This is the statutory enactment in many states. As before suggested, this is the only construction which will be in harmony with the construction to be placed on other statutes bearing upon the same subject-matter, the only one which will not lead to serious complications and very unjust results, and the only one which will not countenance and authorize the issuing of executions after the death of a party, and the seizure and sale of personal estate to satisfy the same. To admit this construction would wholly defeat the object of the statute in force, when Byrnes died, for the distribution of insolvent estates, which was, after the payment of preferred claims, an equal distribution of the assets of the estate of the deceased among all the creditors. G. S. 1878, c. 53, § 38.

In so construing section 5447 we have had no assistance from the decisions of other states, for we have been unable to find a like statute in any other state except Oregon. In the case of Bower v. Holladay, 18 Ore. 491, 22 Pac. 553, the supreme court of that state, evidently with considerable doubt and misgiving as to what might be the practical results, and admitting that its views were "liable to be startling," held that under a section of their Code, worded as is section 5447, a judgment creditor was entitled to have an execution issued on a judgment against the property of the debtor, or for the delivery of real or personal property, notwithstanding the death of the debtor; and that construction was given in a case where the seizure had been of personal property, not real. Evidently, the court paid no attention to any other statutory enactment which might have thrown light upon the legislative intention, and perhaps there were none. In view of this, as well as the hesitation manifested in the opinion, we decline to recognize it as an authority at this time. A judgment creditor who has acquired no lien prior to the decease of a judgment debtor must proceed to establish and collect his claim and demand as a general creditor, and in the due course of proceedings in administration; or, in a proper case, he may have the remedy prescribed in section 5437.

In conclusion, it is well to say that the record does not show, nor do the defendants contend, that either or any of the plaintiffs are estopped by their acts or conduct from maintaining this action.

Order reversed.