LUCY A. GRISWOLD v. JOHN F. McGEE and Another.[1]

July 26, 1907.

Nos. 15,181—(70,[2] 13[3]).

**Statutory Abolition of Dower.**

> The right which a wife has by virtue of chapter 40, Laws 1875, and
> chapter 37, Laws 1876, in the lands of her husband during coverture, is
> inchoate and contingent, and may, at any time before it becomes consum-
> mate by the death of the husband, be diminished or entirely taken away
> by the legislature.

**Act of 1901.**

> Chapter 33, Laws 1901, applies to cases in which marriage and seisin oc-
> curred prior to its enactment.

Appeal by plaintiff from an order of the district court for Hennepin
county, Simpson, J., sustaining defendants' demurrer to the complaint.
Affirmed.

*Francis B. Hart,* for appellant.

In regard to the amendment of the prior statute by Laws 1901, c.
33, three questions arise: 1. Does it apply to coverture lands ac-
quired prior to its passage? 2. Does it apply to coverture lands sold,
prior to its passage, upon execution upon a judgment against the
owning spouse, no redemption being made? 3. Does it apply to an
action, brought after its passage by a surviving spouse against a
fraudulent vendee, for equitable relief as against a deed, procured
prior to its passage, and jointly executed by the husband and wife,
conveying all interests in the property, or the interest of the surviv-
ing spouse? If all these propositions are answered affirmatively, this
plaintiff is out of court. She has no cause of action. If any one of
them shall be answered in the negative, the order herein appealed
from should be reversed.

1. Does the amendatory act apply to lands which were owned by
married people, who were living in the marriage relation at the date

[1] Reported in 112 N. W. 1020; 113 N. W. 382.
[2] April, 1907, term.          [3] October, 1907, term.

of its passage? By a great consensus of authority it has been held that common-law dower lands are proper subjects of legislation, at any time during the life of the husband. As between husband and wife such rights can be modified, enlarged or entirely abrogated. Cooley, Const. Lim. (5th Ed.) 442; Dolton v. Cain, 14 Wall. 472; 1 Washburn, Real Prop. 301; Randall v. Kreiger, 23 Wall. 137; Richards v. Bellingham Bay Land Co., 54 Fed. 209; Lucas v. Sawyer, 17 Iowa, 517; Guerin v. Moore, 25 Minn. 462.

By chapter 37, Laws 1876, the rights of a surviving spouse were still further enlarged, giving one-third of all lands of which the deceased was, at any time during coverture, seized or possessed. With slight and immaterial amendments, this remained the law of our statute book until the amendment of 1901, and with that amendment, is the law to-day. The same act also provides for passing to the heir the title to real property by descent. As between husband and wife it creates a present community property. As to the heir it speaks from the death of the ancestor.

This court has not yet declared point blank that the wife's interest in her husband's real estate, during his life, is a vested right, and without the power of the legislature to disturb. But it has established in its decisions all the basic principles applicable to her property rights which in logical result and natural application must sooner or later enforce such expression, and the full recognition of vested rights fully secured. Holmes v. Holmes, 54 Minn. 352, 354; In re Rausch, 35 Minn. 291, 293; Dayton v. Corser, 51 Minn. 406, 415; Minneapolis & St. Louis R. Co. v. Lund, 91 Minn. 45, 48; Johnson v. Minn. L. & T. Co., 75 Minn. 4, 8; Aretz v. Kloos, 89 Minn. 432. According to these decisions, all of which are in present favor, the wife's interest in the real property of her husband is a fixed, accrued right to an ascertained and established quantum of interest, to become vested upon the contingency of the husband dying before the wife. Comparing them with the language used in Guerin v. Moore, supra, construing common-law dower, we have antipodals not parallels. The rights of the wife as construed by the old common law, and as now fixed by the statute, G. S. 1894, § 4471, are as antagonistic as alkali and acid. In some of the decisions we have cited, the

court, as we think, erroneously assumes that the wife has no "vested interest." We claim this is a misnomer and nothing more. The substance of her right is clearly defined, recognized with certainty, declared to be an interest already attached and contingent only upon the husband's death. By whatsoever name it is called, we fail to see how it can in principle be distinguishable from a vested right.

The sole difference between the two is that the husband can convey his undivided two-thirds interest in property by him owned, without the wife joining in the deed, while the wife cannot convey a like interest in her individual property because of another statute which requires the husband to join. Aside from this each have perfectly equal rights in the property of the other. The statute referred to merely gives the husband the right to be arbitrary, obstinate and dictatorial as to the wishes of the wife in matters pertaining to her own property and nothing more. In no manner or at any time, before or after death, directly or indirectly, does it increase or more securely vest his property right.

2. Does the act of 1901 apply to land which, prior to its passage, has been sold upon execution against the owning spouse, and no redemption made? The legislature seems to have had this question in mind when adopting the act, and the language chosen to express their intention, explicitly answers it. The amendment excepts from the operation of the main act "such lands as have been divested by execution sale." If such interest was ever divested by execution sale, it must have occurred when the sale was made. The law as then existing (1893) fixed and determined what passed to the execution purchaser. The interest of the joint owning spouse did not pass. It was not affected by the sale. The thought may occur that the main purpose of the entire act, as amended, being to regulate the descent of real property, it speaks from the death of the deceased, which in this instance occurred in 1903, and after the amendatory act was adopted. Even if this be so, which it is not, we must still look to the law as it stood at the time of the execution sale to ascertain whether the joint interest of the wife was divested by such sale.

The act cannot be construed retroactively. Potter, Dwarris, St. 75, 164; Giles v. Giles, 22 Minn. 348; Wilson v. Red Wing School Dis-

trict, 22 Minn. 488; State v. Waholz, 28 Minn. 114; Gaston v. Merriam, 33 Minn. 271.

3. Does the act of 1901 detrimentally affect or annul a cause of action for equitable relief, against a fraudulent vendee, which accrued prior to its enactment? As well combat a proposition of Euclid or overthrow an axiom as maintain the affirmative of the above interrogatory. When on November 24, 1899, the plaintiff executed a deed, her husband joining, conveying her entire interest in the real estate in controversy, there was no longer left remaining in herself or husband any title to said real estate to which the act of 1901 would in any manner relate or upon which it could act. If, as alleged, such deed was procured by the defendant through fraudulent representations, plaintiff had an immediate cause of action against the defendant based upon the fraud. Her cause of action accrued instantaneously with the making of the false representations, and the giving of the deed in reliance thereon. As against said cause of action, the statute of limitations did not operate until her discovery of the fraud, but her cause of action was as perfect before she discovered the fraud as thereafter.

*Wm. A. Lancaster,* for respondents.

In statutes regulating the descent of real property, all provisions made for the benefit of the wife speak as of the date of the death of the husband. Guerin v. Moore, 25 Minn. 462; Randall v. Kreiger, 23 Wall. 137, 148; Richards v. Bellingham Bay Land Co., 54 Fed. 209; Melizet's Appeal, 17 Pa. St. 449; Lucas v. Sawyer, 17 Iowa, 517; Sturdevant v. Norris, 30 Iowa, 65; Noel v. Ewing, 9 Ind. 37; Strong v. Clem, 12 Ind. 37; Taylor v. Sample, 51 Ind. 423; Carr v. Brady, 64 Ind. 28; Bates v. McDowell, 58 Miss. 815; Foley v. Kane, 53 Iowa, 64; Parker v. Small, 55 Iowa, 732; Cunningham v. Wilde, 56 Iowa, 369.

That the interest of the wife in the estate of her husband in his lifetime is inchoate and not vested, this court has held in every case involving the question decided since 1875 (citing Minnesota cases referred to in the opinion).

It is settled law in the federal courts, in this court, and in the courts of every state in the Union, that the legislature has the absolute power at any time, before the death of the husband, to alter, amend, enlarge, diminish or entirely abrogate, the provisions made for the wife. The principle is that what the legislature, from motives of public policy, gives, it may at any time, before a right thereto becomes a vested one, recall or, as stated by this court in Bailey v. Mason, 4 Minn. 430 (546): "Where a statute gives a right in its nature not vested, but remaining executory, if it does not become executed before a repeal of the law, it falls with it and cannot thereafter be enforced." This principle has been applied to a variety of cases:

It was competent for the legislature to enact a statute to abolish the right of a creditor to imprison his debtor, if the latter had not sufficient property to satisfy his creditor's execution.

In practically all the states there are usury laws, many of them forfeiting the interest, and some, like Minnesota, forfeiting both principal and interest. Yet, it was held that the legislature may repeal the law so as to destroy the defense of usury and make the repealing statute apply to all existing contracts. Ewell v. Daggs, 108 U. S. 143; Campbell v. Holt, 115 U. S. 620, 627; Wood v. Kennedy, 19 Ind. 68; Welch v. Wadsworth, 30 Conn. 149; Butler v. Palmer, 1 Hill, 324; Hampton v. Com., 19 Pa. St. 329; Baugher v. Nelson, 9 Gill, 299, 304.

Where a statute prohibiting a recovery of compensation for services by a physician practicing without a license is repealed, after its repeal, a recovery can be had for services performed before the repealing act took effect. In other words, the repealing statute destroyed what was absolute defense against a recovery for medical services performed by unlicensed persons while the former statute was in effect. Campbell v. Holt, supra.

Attachment laws confer upon creditors a most valuable right. Under the attachment statutes, a creditor may, in certain cases, levy upon property of his debtor sufficient to make his debt absolutely secure, and after he has acquired a lien, it is competent for the legislature to repeal the statute, and the repeal carries down with it and destroys all existing attachment liens. Evans-Snider-Buel Co. v. McFadden,

105 Fed. 293; National Bank of Commerce v. Reithmann, 79 Fed. 582; Freiberg v. Singer, 90 Wis. 608; Stephenson v. Doe, 8 Blackf. 508, 513.

It is held by all courts that have passed on the question, including this court, that after the material has been furnished and labor performed and the lien statement filed, and at any time before judgment is entered adjudging the debt to be a lien upon the property, the legislature may repeal the law and make the repeal apply to existing cases. Bailey v. Mason, supra; Dunwell v. Bidwell, 8 Minn. 18 (34); Coleman v. Ballandi, 22 Minn. 144.

It is competent for the legislature to change the law and reduce the rate of interest on judgments, making it applicable to all judgments existing at and prior to the date the law takes effect. Morley v. Lake Shore & Michigan Southern Ry. Co., 146 U. S. 162.

Where a debt is barred by operation of the statute of limitations so that the debtor has an absolute defense against the enforcement of the debt, it is competent for the legislature to repeal the statute of limitations, and a repeal of the statute of limitations destroys the defense as to all cases where the bar was complete before the repeal. Campbell v. Holt, supra.

ELLIOTT, J.

The questions of law which arise upon this appeal from an order sustaining a demurrer to the complaint are so clearly defined that it is only necessary to state the facts in a summary way.

The plaintiff, Lucy A. Griswold, was married to Nelson F. Griswold prior to 1866. Prior to 1885 Mr. Griswold became the owner in fee of a certain platted tract known and described as "Minnetonka Lake Park," Hennepin county, Minnesota, and remained the owner of the land until the sale of the same under execution and the expiration of the time to redeem therefrom. In February, 1893, a judgment was obtained against Griswold in favor of the Rhode Island National Bank for $1,307.67. April 7, 1893, a second judgment was obtained against Griswold for the sum of $12,827 in favor of one John MacLeod, as surviving partner of A. J. Sawyer & Co. The real estate in question was sold upon executions issued upon each of these judg-

ments, and no redemption was made from either sale. November 1, 1899, defendant John F. McGee, having previously purchased the interests acquired by the purchasers at these execution sales, also procured tax deeds to the lands in question from the auditor of Hennepin county, based upon a tax sale of May 1, 1893, for the taxes levied for the year 1891, at which sale the property was bid in by the state. November 23, 1899, McGee caused redemption notices to be issued by the auditor, which, however, were void, because they did not include the amount required to be paid in redemption and satisfaction of other delinquent taxes against the property. On November 24, 1899, McGee procured a deed to the property from Nelson F. Griswold and his wife, Lucy A. Griswold, plaintiff in this action, and thereafter, on May 8, 1900, brought an action in the district court of Hennepin county to determine adverse claims to the property. Lucy A. Griswold, who was joined as one of the defendants, appeared and answered, but subsequently withdrew her answer. On October 15, 1900, a decree was entered against all the defendants quieting the title of the property in question in John F. McGee. During all this time Lucy A. Griswold was the wife of Nelson F. Griswold. No judgments were ever obtained against her, and she signed no deeds and made no voluntary conveyance of the land until the deed to McGee of November 24, 1899. Nelson F. Griswold died in March, 1903, and in September, 1906, Lucy A. Griswold, his surviving wife, brought this action to have the deed to McGee canceled and annulled on the ground that it was obtained from her by fraud, and that she be adjudged the owner of an undivided one-third interest in the property in question.

Passing for the present the question of fraud, we proceed to determine whether Lucy A. Griswold had any interest in the land in question when she and her husband executed the deed on November 24, 1899. If she had not, the other question is immaterial.

Prior to the enactment of chapter 33, p. 34, Laws 1901, which went into effect March 11, 1901, the so-called "dower interest" of a wife in the land of her husband was not divested by a sale of the land under an execution issued upon a judgment against the husband. Section 1 of this statute provides that:

Such surviving husband or wife shall also be entitled to and shall hold in fee simple, or by such inferior tenure as the deceased was at any time during coverture seised or possessed thereof, one equal undivided one-third of all other lands of which the deceased was at any time during coverture seised or possessed (except such lands as have been divested by execution sale, or sale under a decree of court of competent jurisdiction, or by deed of assignment for benefit of creditors, or by insolvency or bankruptcy proceedings and subject to all judgment liens) free from any testamentary or other disposition thereof to which such survivor shall not have assented in writing but subject, in its just proportion, with the other real estate to the payment of such debts of the deceased as are not paid from the personal estate. The residue of said other lands, or, if there be no surviving husband or wife, of such intestate, then the whole of said other lands shall descend, subject to the debts of the intestate, in the manner following.

The part of this section printed in parenthesis was new. If it applies to cases in which marriage and seisin occurred prior to March 11, 1901, then, if the act so construed is constitutional, the appeal must be affirmed.

The language of the amendment is not happily chosen, and in order to determine whether the legislature intended it to apply to coverture lands acquired prior to its passage it is necessary to consider the law as it then existed and ascertain whether there were any evils which the legislature must have had in view and intended to remedy. Section 4471, G. S. 1894, provided:

Such surviving husband or wife shall also be entitled and shall hold in fee simple or by such inferior tenure as the deceased was at any time during coverture seised or possessed * * * free from any testamentary or other disposition thereof to which such survivor shall not have assented in writing, but subject in its just proportion with the other real estate to the payment of such debts of the deceased as are not paid from the personal estate.

In Dayton v. Corser, 51 Minn. 406, 53 N. W. 717, 18 L. R. A. 80, it was held that the inchoate interest of husband or wife in real estate owned by the other as fixed by this statute was not divested by a transfer of the title from the owner of the property to a purchaser at an execution sale founded on a judgment against the owner. The common-law rule was that a wife could not be deprived of her dower right in the real estate of her husband through a sale upon an execution under a judgment obtained against the husband subsequent to their marriage. Starting with this common-law rule, it was said that the provisions of the statute were rather in the nature of an enlargement than an abolishment of dower, that the inchoate right of the wife under the statute was of the same general nature as the inchoate right of dower at common law, and that the common-law right is emphasized by the provision that it shall be free from any testamentary or other disposition to which the survivor has not assented in writing, subject, in its just proportion with the other real estate, to the payment of such debts of the deceased as cannot be paid out of the personal estate. Neither husband nor wife can be divested of the statutory right of their interest in the real estate of the other without having consented thereto in writing. Any other rule, it was suggested, would enable the husband, through connivance with a fictitious creditor, to deprive the wife of the interest which the statute so carefully defined and guarded. It soon became apparent that this rule, though proper enough under the conditions which formerly prevailed, was unduly restrictive under modern conditions. It practically destroyed the value of real estate as the basis of credit.

The question next came before the court in Merrill v. Security Trust Co., 71 Minn. 61, 73 N. W. 640, 70 Am. St. 312. Merrill, a married man, executed to the Security Trust Company an assignment of all his nonexempt property for the benefit of his creditors. The wife did not join in the deed of assignment, and after the death of her husband in 1896 she brought an action against the trust company for a partition of the real estate on the theory that she was then the absolute owner of an undivided third thereof free from the payment of any part of the debts of her deceased husband. The court reached the conclusion that the deed of assignment transferred the wife's in-

choate right to the trustee, and that her interest remained only in the land, if any, which remained undisposed of after the trust was fully executed. The proviso with reference to the payment of debts after the death of the husband suggested a similar disposition of the property when the entire estate was being distributed in bankruptcy proceedings. In order to reach this conclusion it was necessary to disregard some of the general statements which had been made in the opinions in Dayton v. Corser, supra, and Goodwin v. Kumm, 43 Minn. 403, 45 N. W. 853.

In Johnson v. Minnesota Loan & Trust Co., 75 Minn. 4, 77 N. W. 421, 74 Am. St. 438, the court showed a disposition to still further restrict the effect of Dayton v. Corser. In speaking of that case, the court said that "the inchoate, contingent, statutory interest of a husband or wife in the real estate of his or her spouse is not divested or affected by a sale of the property on execution against such spouse. Thus far the decision must be adhered to as having become a rule of property, and must remain the law unless changed by statute; but the decision should not be extended one whit beyond the exact point decided, either by way of analogy or for the sake of logical consistency."

In 1901 the statute now under consideration was passed; but its existence was overlooked by court and counsel when the original opinion in Aretz v. Kloos, 89 Minn. 432, 95 N. W. 216, 769, was prepared. In an opinion filed thereafter attention is called to this fact, and the statement is made that by the statute as amended "such lands as had been divested by execution sale were expressly excepted from the theretofore existing statutory rule regulating the descent of real property. Obviously this statute was passed with reference to Dayton v. Corser, and for the express purpose of changing the law as therein announced."

There can be no serious doubt but that this statement is correct. The legislature intended to change the rule which had been established by Dayton v. Corser, and the question is whether the amendment was intended to operate upon lands which had been acquired by parties who were married before the passage of the amendment. The amendatory part of the statute is thrown in parenthetically; but

we think that the legislature intended the act to apply as of the date of the death of the husband, and to operate upon all lands of which he had been seised or possessed during coverture. It was legislating with reference to the rights of surviving husbands and wives, and declaring what such husbands or wives should be entitled to out of the estate of the deceased spouse. There can be no surviving husband or wife until the death of the other spouse. As said in Richards v. Bellingham Bay Co. (C. C.) 47 Fed. 854: "By the terms of the act the only rights given are given to widows of deceased persons, and it is plain that under it no right could become vested in any woman until her status as a wife changed to that of a widow." Statutory provisions which are intended for the benefit of the wife speak as of the date of the death of the husband. There is no question but that this is true, in so far as it related to the common-law right of dower, and we think it is equally true of the statutory substitute for dower.

The act of 1901 was in force when Lucy A. Griswold became the surviving wife or widow of Nelson F. Griswold. In Guerin v. Moore, 25 Minn. 463, in speaking of the right of dower, the court said: "It is merely a right (if it may properly be termed a right) to such interest in the lands of the husband as may be allowed by the law which shall be in force at his death." In Randall v. Kreiger, 23 Wall. (U. S.) 137, 23 L. Ed. 124, it is said that: "In measuring her rights, we look to the law in force at the time of the husband's death; for it is this event which ripens or makes consummate the prior right, which, so long as it rested upon the marriage and seizure, was inchoate only. If there was no law in force at that time giving her the right, then it is extinguished. She cannot take under a law repealed prior to that time." In Richards v. Bellingham Bay Land Co., 54 Fed. 209, 4 C. C. A. 290, Judge Knowles said: "The rule is that dower must be measured and allotted according to the law at the time of the death of the husband." See, also, Lucas v. Sawyer, 17 Iowa, 517, 518. In view of this rule it must have been the intention of the legislature that the amendment should apply in determining the rights of all persons who thereafter became surviving wives or husbands. Necessarily, then, it operated upon all past transactions, and determined

the effect which should be given thereto at the time the right of the surviving husband or wife was to be measured and made effective. Lucy A. Griswold's rights as the surviving wife of Nelson F. Griswold were fixed and determined by the law in force at the time of the death of the husband; that is, by chapter 33, p. 34, Laws 1901.. It follows that the execution sale in question, by virtue of chapter 33, p. 34, Laws 1901, operated to divest Mrs. Griswold of her interest in the lands of her husband, unless the act is unconstitutional as attempting to deprive her of an estate in land which had become vested prior to the enactment of the statute.

The appellant contends that she had a vested property right in the land during the life of her husband, of which she could be deprived only by her own act, and that this right became a fee-simple title absolute upon the death of her husband. The respondent, on the other hand, contends that the interest of the wife in the lands of the husband is an inchoate right, of which she may be divested by the legislature at any time before the death of the husband.

It is conceded that the common-law right of dower is the creature of the law and entirely within the control of the legislature. No right to dower, strictly speaking, accrues until the death of the husband. As said in Randall v. Krieger, 23 Wall. 137, 148, 23 L. Ed. 124, and quoted in Guerin v. Moore, supra: "During the life of the husband the right is a mere expectancy or possibility. In that condition of things the lawmaking power may deal with it as may be deemed proper. It is not a natural right. It is wholly given by law, and the power that gave it may increase, diminish, or otherwise alter it or wholly take it away." The right to inchoate dower given at common law is not a vested interest. Morrison v. Rice, 35 Minn. 436, 29 N. W. 168; Alexander v. Alexander, 85 Va. 354, 7 S. E. 335, 1 L. R. A. 125; Noel v. Ewing, 9 Ind. 37; Lucas v. Sawyer, 17 Iowa, 517; McNeer v. McNeer, 142 Ill. 388, 32 N. E. 681, 19 L. R. A. 256; Burget v. Merritt, 155 Ind. 143, 57 N. E. 715; Chouteau v. Missouri, 122 Mo. 375, 394, 22 S. W. 458, 30 S. W. 229; 8 Cyc. 909. It is not necessary to multiply citations upon this question as it is conceded that, as stated in 14 Cyc. 884, "it is within the power of the legislature to diminish, alter, or abolish dower, where the right there-

to is merely inchoate and has not become consummated by the death of the husband; but a statute taking away the right of dower after it has already become consummate and vested by the death of the husband is unconstitutional and void."

But common-law dower has been abolished in this state, and the question is whether the wife under the statute takes a vested interest in her husband's land. By the organic act of March 3, 1849, the laws of Wisconsin were continued in force in the territory of Minnesota, subject to modification by the governor and legislative assembly. At the second session of the legislature in 1851 the Wisconsin dower law was adopted without any material change. Pub. St. 1849–1858, p. 407, c. 36. This statute, which gave the surviving wife dower as at common law, remained in force until 1875, when dower and curtesy were expressly abolished, and in lieu thereof it was provided that, upon the death of a husband or wife who is seised or possessed of an estate in lands within this state, the surviving husband or widow shall be entitled to a life estate in the homestead, and also "be entitled to and shall hold in fee simple or by such inferior tenure as the deceased was seised or possessed thereof one undivided one third of all other lands of which the deceased died seised or possessed, free from any testamentary disposition thereof to which such survivor shall not have assented in writing, but subject in its just proportion with the other real estate for such debts of the deceased as are not paid from the personal estate." Chapter 40, p. 74, Laws 1875. It will be observed that this statute gave the wife a life estate in the homestead and a fee-simple title to an undivided third of all other lands of which the husband died seised. The next legislature amended this by giving the surviving spouse an undivided one-third of all lands of which the deceased was at any time during coverture seised or possessed. Chapter 37, p. 55, Laws 1876. No material amendments of this statute were made until the enactment of chapter 33, p. 34, Laws 1901.

Common-law dower was that portion of lands and tenements which the wife had for the term of her life in the lands or tenements of her husband after his decease, and consisted of a third part of all the lands and tenements of which the husband was seised in fee simple or fee tail at any time during the coverture, of which any issue which she

might have had might by possibility have been heir, to be held by the wife for the term of her natural life. It was a life estate only in one-third of the lands and tenements of which the husband was seised of an estate of inheritance at any time during coverture. The act of 1875 and 1876 gave the surviving wife a fee-simple title, or the highest title the husband had, to all lands of which he was seised or possessed. For the old life estate in all lands or tenements of which the husband was seised of an estate of inheritance it gave a life estate in the homestead and a fee-simple estate to an undivided one-third of all the lands of which the husband was seised and possessed at any time during coverture. It is not very material whether the property she thus received is called "dower," or described as an "enlargement of dower," or an "estate in the nature of dower," if we remember the fact that the interest is now as defined by the statute and not by the common law. The interest, whatever it is, is preserved for the surviving wife, and we are unable to see why the change in the quantity of interest and nature of estate which the wife acquires when she becomes a widow makes any change in the nature of her interest or expectancy after marriage and before it is consummated by the death of the husband. The estate which she acquires under the statute is a higher estate than she acquired at common law, but in no case does she acquire the estate until she becomes a surviving wife. The legislature did not assume to change the nature of the expectancy she already had; that is, the right to a certain portion of her husband's property upon his death. At common law that right gave her a life estate. The statute gave her more, but did not vest any title in her thereto until the death of the husband. If the statutory interest of the wife is inchoate and contingent upon the death of the husband, it is not a vested estate. The word "vested," said Judge Thayer in Evans-Snider-Buel Co. v. McFadden, 105 Fed. 293, 44 C. C. A. 494, 58 L. R. A. 900, "is used to define an estate, either present or future, the title to which has become established in some person or persons and is no longer subject to any contingency, and when the phrase a 'vested right' or a 'vested interest' is used in other relations it may, with reasonable precision, be held to mean some right or interest in property that has become fixed or established and is no longer open to doubt or controversy."

An examination of the various cases in which this court has construed the present statute shows that the interest of the wife before the death of the husband has been generally, if not uniformly, spoken of as an inchoate, contingent interest, in substance and effect the same as the dower right of the wife at common law.    In Washburn v. Van Steenwyk, 32 Minn. 336, 20 N. W. 324, the court said: "This statutory right is not more absolutely bestowed upon the wife as an inchoate estate, to become consummate and vested upon the death of the husband, than was the former estate of dower for which it is substituted."    In Re Rausch, 35 Minn. 291, 28 N. W. 920, Mr. Justice Mitchell said that "the provisions of the present statute for the widow in the real estate of her deceased husband are rather in the nature of an enlargement than an abolishment of dower, and this inchoate right under the statute is of the same general nature as the inchoate right of dower at common law."    In Holmes v. Holmes, 54 Minn. 352, 56 N. W. 46, the court said: "The present provisions for the wife, above specified, were clearly intended to be in lieu of dower and retain its essential features.    The interest thereby created is inchoate upon the marriage and seisin, and becomes absolute at his death. * * *    The estate under consideration thus created for the benefit of the wife has always since the act of 1875 been treated by this court as in the nature of dower and governed by the same rules of legal construction."

See In re Gotzian, 34 Minn. 159, 162, 24 N. W. 920; In re Rausch, supra; Morrison v. Rice, supra; Roach v. Dion, 39 Minn. 449, 450, 40 N. W. 512; Goodwin v. Kumm, 43 Minn. 403, 45 N. W. 853; McGowan v. Baldwin, 46 Minn. 477, 49 N. W. 251; Dayton v. Corser, 51 Minn. 406, 53 N. W. 717, 18 L. R. A. 80; Holmes v. Holmes, 54 Minn. 352, 354, 355, 56 N. W. 46; Scott v. Wells, 55 Minn. 274, 277, 56 N. W. 828; Ortman v. Chute, 57 Minn. 452, 455, 59 N. W. 533; Byrnes v. Sexton, 62 Minn. 135, 137, 138, 64 N. W. 155; Merrill v. Security Trust Co., 71 Minn. 61, 63, 65, 73 N. W. 640, 70 Am. St. 312; Johnson v. Minn. L. & T. Co., 75 Minn. 4, 7, 8, 77 N. W. 421, 74 Am. St. 438; Lowe v. Lowe, 83 Minn. 206, 209, 86 N. W. 11; Aretz v. Kloos, 89 Minn. 432, 438, 440, 95 N. W. 216, 769; Minneapols & St. Louis R. Co. v. Lund, 91 Minn. 45, 48, 97 N. W. 452. We see no reason to doubt the correctness of the statements made in

these cases, and hold that the interest which Mrs. Griswold had in the estate of her husband was an inchoate, contingent interest, which was subject to be restricted or destroyed by the legislature at any time before it became vested by the death of her husband.

The appellant further contends that, even if the act of 1901 is constitutional, it does not apply to lands which prior to its passage had been sold upon execution against the owning spouse and no redemption made therefrom.

The execution sale did not affect the wife's interest in the land. At the time the act of 1901 was passed her interest existed, unless conveyed by the deed to McGee in 1899. If the deed had not been given, the statute operating as of the date of the death of her husband would have given force as against her to the prior execution sale. Operating thus retroactively, it destroyed the interest which Mrs. Griswold had, and, without reference to the deed, she had no interest in the land upon the death of her husband in 1903. If the deed was set aside, she would then have no interest in the land. The act passed during her husband's life operated to defeat her rights, whatever they were. See Lucas v. Sawyer, 17 Iowa, 517; Sturdevant v. Norris, 30 Iowa, 65; Bates v. McDowell, 58 Miss. 815. If nothing passed by the deed from Mrs. Griswold to McGee, no cause of action arose against McGee, even though the deed was obtained by fraud, as alleged in the complaint. The briefs and arguments in this case covered a wide range, and many authorities from other states are cited and commented upon. We find it unnecessary to refer to these cases in detail, or even cite them, as the matter is purely one of statutory construction, and the principal question, that of the nature of the wife's interest before the death of her husband, has been previously decided indirectly at least by numerous decisions of this court. It follows, as already suggested, that the question of the alleged fraud is immaterial.

The order appealed from is therefore affirmed.

On October 18, 1907, the following opinion was filed:

PER CURIAM.

An application for a rehearing was granted in this case, and the designated questions were fully argued by counsel for the respective par-

ties. After full and careful consideration, we are satisfied that the decision heretofore filed is correct, and it will therefore stand as the opinion and decision of the court.

Let there be a stay of all proceedings in this court for ten days after the filing of this decision.