B. TAIT, Appellant, v. W. L. CRISSMAN and R. B. REID, Appellees.

**Fraudulent conveyances: ACCOUNTING.** Where the interest of the debtor in attached property consisted of a mere option to purchase land and was of no value to the creditor at the time of the attachment, unless he was willing to ' protect the option against immediate forfeiture by assuming the balance due on the purchase price, which he did not do and the contract was forfeited, an assignment of the contract by the debtor to another was not such a fraud upon the creditor as entitled him to an accounting from the assignee.

*Appeal from Linn District Court.*—HON. W. N. TREICHLER, Judge.

THURSDAY, JANUARY 16, 1913.

ACTION by plaintiff as a judgment creditor to set aside an alleged fraudulent conveyance. There was a trial on the merits and a decree dismissing the petition. Plaintiff appeals.— *Affirmed.*

*C. D. Harrison* and *Redmond & Stewart,* for appellant.

*Crissman, Linville & Churchill* and *Dawley & Wheeler,* for appellees.

EVANS, J.—In June, 1909, the plaintiff Tait obtained a judgment for about $3,000 against the defendant Reid in the superior court of Cedar Rapids. Reid was insolvent. Both

parties reside at Cedar Rapids, as does also the defendant Crissman, who is a practicing attorney there. In September, 1909, Reid obtained from one Taylor, also of Cedar Rapids, an option to buy a certain forty-acre tract of land known as Taylor's addition to North Platte, Neb. For such option he paid $400. The final exercise of the option to buy would require him to pay within sixty days an additional sum of $12,600. Later this time was extended, and a written contract was entered into containing strict provisions for forfeiture in case of failure to pay the purchase price. It appears that this tract had been duly platted into town lots, but no lots had been sold therefrom, and it continued in use as a field or pasture. Reid immediately went to Nebraska and put the lots on sale on long time and easy payments. He secured a large number of contracts for the sale of the lots totaling from $12,000 to $13,000 in amount. The purchasers were persons of small means who made small payments and bound themselves to pay in the future in small installments.

This was the state of affairs in February, 1910, when the plaintiff began an action in the courts of Nebraska on his judgment and levied a writ of attachment upon all the property and garnished various parties as supposed debtors of Reid. This procedure naturally stopped the further progress of the enterprise, though there were many unsold lots. Thereafter Reid came to Cedar Rapids. He was indebted in some amount for services to Crissman and his firm. He conveyed to Crissman all his interest in the Nebraska property, and assigned to him his contract with Taylor. For this transfer there was no special consideration except perhaps the existing indebtedness and a desire on the part of Reid to protect the purchasers from him and a willingness on the part of Crissman to take the risk of the enterprise for the possible profits which it might give him. Crissman intervened forthwith in the Nebraska suit, and the litigation there is still pending. In May, Taylor served notice of forfeiture. Both Tait and Crissman were advised of this notice, and both refused

to perform Reid's contract with Taylor. Taylor declared a forfeiture, and later entered into a similar contract of sale with Crissman alone for a consideration to be paid of $12,600. Crissman thereupon went to Nebraska and carried on the enterprise. He offered performance of all existing contracts that had been made by Reid. Many of them, however, were abandoned. Many other sales were made by Crissman. He employed Reid to assist in the enterprise at an agreed commission of seven and one-half per cent. He advanced him more or less funds for expenses in advance of commissions earned. Upon this state of affairs plaintiff brought this action in October, 1910. He asked for an accounting from Crissman. He asked and obtained a sweeping temporary injunction. He asked that the transaction between Crissman and Reid be set aside as fraudulent and as done with intent to hinder and delay and defraud creditors, and asked for general equitable relief. The first hearing was had upon motion of defendant to dissolve the temporary injunction. Such injunction being dissolved, a final hearing was had some time later resulting in a decree for the defendant. Plaintiff has appealed both from the order dissolving the temporary injunction and from the final decree, and both features of the case are argued. We shall consider first the merits of the case.

It may well be doubted whether this action can be resolved into anything else than an attempt to establish a lien upon the Nebraska property. It is very clear that no such relief could be awarded, and the plaintiff does not in terms ask it. His theory is that a court of equity may find value in the contracts existing between the parties, and that it may in that way protect the plaintiff by adjudging the defendant Crissman liable to an accounting as for moneys fraudulently received from the plaintiff's debtor. We will not stop now to deal with this particular question. We look first to the question whether the transaction entered into between Reid and Crissman could in any legal sense be deemed a fraud upon the plaintiff as a creditor of an insolvent debtor. It will not

do to say that it was necessarily fraudulent in that Reid thereby disposed of all his property without any consideration, unless it be made to appear also that the contract or right so disposed of was property of some appreciable and available value. It appears from the undisputed testimony that the value of the tract as a whole, at the time of the transactions between Crissman and Reid, was from $8,000 to $10,000. This property was incumbered for the purchase money unpaid of $12,600. It is clear that the only value to be found in Reid's option was the prospective or potential value of the proposed enterprise, which would call for months, and perhaps years, of personal attention, and which might yield large profits or result in considerable loss. If Reid had any prospective profit in the contract before the plaintiff served his attachment, it is manifest from the evidence that he had none afterwards. Plaintiff had already availed himself of his legal remedy against this property by attaching the same. He realized something upon his debt by garnishment in Nebraska. It was after the attachment by plaintiff that Crissman bought. It was not apparent at that time that the purchase by Crissman could operate to any disadvantage to the plaintiff. It appears, however, that in the later proceedings in the Nebraska court the plaintiff's attachment was discharged. For what reason does not appear here, nor would it avail anything if it did. We must take the situation as it was when Crissman took the enterprise.

It is clear from the record before us that the interest of Reid in the Nebraska property at the time of plaintiff's attachment and afterwards was of no value, and that the plaintiff could have realized nothing thereby by means of any process unless he were willing to protect Reid's option contract against immediate forfeiture by assuming the balance of the purchase price. This the plaintiff was not willing to do, and the contract was forfeited. Crissman entered into a new contract with Taylor and is bound to Taylor for the purchase price. Taylor was not affected by the attachment. He had a right to

declare a forfeiture. He did declare it. He then bound himself to convey by warranty deed to Crissman. No right of Tait was violated by these acts of Taylor. And, if there were, Taylor is not made a party to the suit. It seems clear to us, therefore, that the assignment of the contract by Reid to Crissman under the circumstances shown was not a fraud upon Tait in any legal sense.

This was the view of the trial court, and its decree is accordingly *Affirmed*.