CHARLES CARLSON, TRUSTEE, APPELLANT, V. FRED KIRCHMAN ET AL., APPELLEES.

FILED JUNE 12, 1936.  No. 29637.

*H. A. Bryant* and *William Niklaus,* for appellant.

*J. H. Barry* and *H. V. Kanouff, contra.*

Heard before Goss, C. J., Rose, Eberly, Day, Paine and Carter, JJ.

Eberly, J.

This was an action in the nature of a creditor's bill brought by Charles Carlson, as trustee in the matter of bankruptcy of Herman L. Johnson, in the district court for Saunders county, against Fred Kirchman and Hilma Kirchman. The purpose of the action was to set aside, as fraudulent, a warranty deed executed by Herman L. Johnson on October 24, 1933, purporting to convey to defendant Fred Kirchman an undivided one-seventh interest in 229 acres of land situated in Saunders county, Nebraska, all properly described therein, expressly subject to the homestead and dower rights of Carrie Johnson, an incompetent, in and to the same. The petition charges that this deed was executed by the grantors while insolvent, with the intent and purpose on part of the grantors of hindering, delaying, cheating and defrauding their creditors, as to all of which the grantee is alleged to have had full knowledge at and prior to his acceptance of said deed.

By the answer of defendants, they admit the appointment and qualification of the plaintiff, trustee, as of date April 20, 1934; that on or about the 25th day of October, 1933, the said Herman L. Johnson was insolvent, and the owner of a one-seventh interest in the land described in plaintiff's petition, and on said date conveyed the same to defendant, Fred Kirchman. This answer sets forth the homestead of Carrie Johnson, incompetent, and the value thereof; admits the purchase of said interest in said land subject to a real estate mortgage thereon securing approximately $1,470 unpaid, in favor of Carrie Johnson, incompetent; and alleges that the purchase price paid constituted the fair and reasonable value thereof; expressly denies all charges of fraud made by plaintiff; that, prior to the time these defendants purchased said real estate,

said Herman L. Johnson had repeatedly sought to sell the same, and had offered the same to Charles Carlson, who is now suing as trustee, and to John G. Johnson, guardian of Carrie Johnson, incompetent, on substantially the same terms as those upon which these defendants purchased the land, and all refused to purchase the same, giving as reason therefor that said property was not worth the amount of the mortgage against it. It is further alleged that said property was purchased by the defendants for the reason that the defendant Hilma Kirchman, who is a daughter of Carrie Johnson, the owner of the homestead interest, is likewise the owner of an undivided one-seventh interest in said land, and if the same were sold to a stranger, in all probability it would mean discord, lawsuits and expense to the widow, Carrie Johnson, and the remaining heirs who are the owners of this real estate.

To this answer, the plaintiff filed a general denial.

There was a trial to the court, at the close of which the court found generally in favor of the defendants and against the plaintiff, ordered the deed confirmed, and that plaintiff pay the costs of the action. From the overruling of his motion for a new trial, the plaintiff appeals.

We have carefully examined the testimony as preserved in the bill of exceptions, and are quite of the opinion that the action of the trial court is, in all respects, correct.

Carrie Johnson, the incompetent, is the mother of John G. Johnson, Herman L. Johnson, and Hilma Kirchman. Prior to the conveyance, Herman L. Johnson was the owner of the one-seventh interest in the real estate in litigation. It was embraced within the mother's homestead, and subject to the superior rights of the mother for the period of her lifetime. It was mortgaged to Carrie Johnson, the incompetent, to secure an indebtedness then amounting to $1,470. It is fairly established that this one-seventh interest in its then condition was unsalable and could not be partitioned, and the actual value thereof did not exceed the amount due on the mortgage lien. In

this condition of affairs, the son-in-law, Fred Kirchman, purchased it for the amount of the encumbrance against it, and took a conveyance thereof, subject to the same, and paid therefor, in addition, the sum of $1 in cash. This transaction was more than four months prior to the institution of the bankruptcy proceedings which resulted in the appointment of plaintiff herein as trustee in bankruptcy. It is quite true that, as to such transactions, by the provisions of the federal bankruptcy act, as to property of the bankrupt or in which he had any interest and which is not in custody of the bankruptcy court, the trustee is deemed vested, as of the date of institution of bankruptcy proceedings, with all the rights and remedies of a judgment creditor holding an execution duly returned unsatisfied. In other words, section 70e of the bankruptcy act gives the trustee in bankruptcy a right to recover property transferred in violation of state law, without reference to the four months' limitation, and if a creditor could have avoided the transfer under the state law, the trustee may do the same. *Stellwagen v. Clum,* 245 U. S. 605. It follows that the true character of the conveyance in litigation must be determined by our state law.

Section 36-405, Comp. St. 1929, provides: "The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact, and not of law, and no conveyance or charge shall be adjudged fraudulent, as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration."

This court has announced the rule: "In a contest between a vendee and creditors of the vendor, the adequacy of the consideration, if it be a valuable consideration, will not be inquired into except for the purpose of throwing light on the intention of the parties." *Jones v. Dunbar,* 52 Neb. 151, 71 N. W. 976.

Under our statute, there must be actual intent to defraud, participated in by both parties to the transaction, and, indeed, this appears to be the general rule in other

jurisdictions. *Skinner v. Overend,* 190 Minn. 456, 252 N. W. 418.

In the present case, the grantee paid what amounted to the fair market value of the premises, even though the actual cash that changed hands at the time of the delivery of the deed was only $1. He is well within the protection of the rule: "The payment of an adequate present consideration by the transferee or encumbrancer negatives any fraud on creditors and is sufficient to sustain the transaction." 7 C. J. 174. Particularly is this unquestionably true where, as in the instant case, the evidence furnishes no foundation for the inference of actual fraud.

In addition, it appears to be a general rule that a court of equity will not set aside, as fraudulent, a conveyance of an equity in land which was clearly of no actual value. *Williams v. Robbins,* 15 Gray (Mass.) 590; *Tait v. Crissman,* 158 Ia. 220, 139 N. W. 461; *Keith v. Albrecht,* 89 Minn. 247, 94 N. W. 677; *Aretz v. Kloos,* 89 Minn. 432, 95 N. W. 216. In short, an examination of the evidence in the record *de novo* leads inescapably to the conclusion that there was no actual fraud in the transaction in litigation, and that the trial court's action was correct.

The judgment of the district court is, therefore,

AFFIRMED.